IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



| | |
|---|---|
| BARABARA O'NEIL, WILLIAM SEWELL, JULIANNE HUBER, and MISSISSIPPI STATE CONFERENCE OF THE N.A.A.C.P., <br><br> Plaintiffs, <br><br> v. <br><br> DELBERT HOSEMANN, in his official capacity as Secretary of State of the State of Mississippi, KIMBERLY P. TURNER, in her official capacity as Assistant Secretary of State of the Elections Division, PHIL BRYANT, in his official capacity as Governor of the State of Mississippi, and the MISSISSIPPI STATE BOARD OF ELECTION COMMISSIONERS, and its individual members, SECRETARY DELBERT HOSEMANN, GOVERNOR PHIL BRYANT, and ATTORNEY GENERAL JIM HOOD, OFFICE OF ELECTION COMMISSIONERS OF HARRISON COUNTY and OFFICE OF ELECTION COMMISSIONERS OF HINDS COUNTY, <br><br> Defendants. | Civil Action File No. 3:18cv 815- DPJ-FKB |

## COMPLAINT

Plaintiffs Barbara O'Neil, William Sewell, Julianne Huber, and Mississippi State Conference of the NAACP (collectively, "Plaintiffs") allege as follows:

### INTRODUCTION

1. This action concerns the onerous and costly process Mississippians must navigate in order to cast an absentee ballot if they are unable to vote in person on Election Day.

2. Mississippi's absentee ballot procedures stand out as some of the most burdensome in this country.

3. A Mississippian wishing to vote by absentee ballot must satisfy one of a limited number of excuses in order to just request an absentee ballot and then the voter must get *both* their request form *and* their absentee ballot notarized or otherwise witnessed by an officer authorized to administer oaths.

4. In addition, Mississippi does not make the absentee application form available for download and prohibits use of photocopies of the form, therefore requiring the voter to travel to the circuit clerk's office to pick up an original of the application or wait for it to be mailed to them.

5. To make matters worse, Mississippi is one of just three states in the nation that require absentee ballots to be received *before* Election Day – making the timeframe by which Mississippians must complete the arduous absentee voting process even shorter.

6. This burdensome process is difficult to navigate in the best of circumstances. When compounding circumstances - such as an inability to pay for or find notary services, or a delay in postal delivery - add further complications, it becomes impossible.

7. As described more fully below, because county circuit clerks only began sending out absentee ballots on Saturday, November 17th, and because absentee ballots are due back by 5p.m. on Monday, November 26th, Mississippians voting absentee have just a few days over Thanksgiving week to complete the absentee voting process.

8. This is an action for prospective declaratory and injunctive relief to protect the right to vote of those Mississippians who want to cast absentee ballots in the November 27, 2018 runoff election and beyond.

9. The right to vote is a "fundamental political right" that is "preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). The right to vote includes "the right of qualified voters within a state to cast their ballots and *have them counted*." *United States v. Classic*, 313 U.S. 299, 315 (1941) (emphasis added).

10. Individual plaintiffs are permanent residents of Mississippi who have voted and intend to continue voting in Mississippi. All individual plaintiffs are traveling or otherwise out-of-county and will not be home on November 27, the day of the runoff election.

11. Therefore, the only possible way individual Plaintiffs can vote in the runoff election is through absentee vote-by-mail procedures.

12. While each individual Plaintiff requested an absentee ballot in advance of the runoff election, as of November 20, none of them had received an absentee ballot.

13. With less than one week left before the deadline to return absentee ballots and with the intervening Thanksgiving holidays, even if individual Plaintiffs receive their ballots, get them notarized, and send them by overnight mail, it is unlikely that Plaintiffs' ballots will be received by November 26 at 5 pm.

14. Mississippi's absentee ballot procedures burden the right to vote, serve no legitimate governmental purpose that cannot be accomplished by more tailored means, and threaten to disenfranchise honest, eligible voters.

15. For these reasons, and as further alleged in detail below, Plaintiffs respectfully request that this Court issue a declaratory judgment that Mississippi's burdensome and stringent absentee voting requirements violate the fundamental right to vote as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

16. Plaintiffs also request that this Court grant immediate injunctive relief ordering Defendants to count all eligible voters' absentee ballots, including those of Plaintiffs, if postmarked on or before November 27, 2018, and that the Defendant Secretary of State take reasonable steps to notify the public and all counties within Mississippi of the new deadline.

17. Additionally, Plaintiffs request that this Court order Defendants to take all necessary actions to make the absentee voting procedures less burdensome so that they do not violate Plaintiffs and other Mississippians' fundamental right to vote.

## JURISDICTION AND VENUE

18. This action arises under the Due Process and Equal Protection Clauses of the First and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

19. This Court has subject matter jurisdiction over the claim raised in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1343 (jurisdiction over civil rights actions).

20. This Court has authority to grant both declaratory and injunctive relief pursuant to § 2201 (authority to grant declaratory relief), and § 2202 (authority to grant relief ancillary to declaratory judgment), in addition to its authority under the Civil Rights Act and its inherent equitable powers.

21. The Court has personal jurisdiction over Defendants Mississippi Secretary of State Delbert Hosemann, Mississippi Governor Phil Bryant, Assistant Secretary of Elections Kimberly

P. Turner, and the State Board of Election Commissioners and their individual members, whose principal offices are in Jackson, Mississippi. This Court has personal jurisdiction over the Office of Election Commissioners of Harrison County and Hinds County, whose principal offices are in Mississippi.

22. Venue lies in the Southern District of Mississippi pursuant to 28 U.S.C. § 1391(b) because all Defendants are residents of Mississippi, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred and will occur in this judicial district.

## PLAINTIFFS

23. Plaintiff Barbara O'Neil is eighty-seven years old and is a permanent resident of Hinds County, Mississippi. She is visiting family in Tennessee in the days leading up the November 27 runoff election and cannot vote in person on Election Day. Ms. O'Neil has voted consistently in several Mississippi election cycles and is eager to vote in the November 27 runoff election.

24. Plaintiff William Sewell is sixty-five years old and is a permanent resident of Harrison County, Mississippi. He is a professor at Harvard Medical School and has been in Boston since November 15 and therefore cannot vote in person on Election Day. Mr. Sewell has voted consistently in several election cycles and is eager to vote in the November 27 runoff election.

25. Plaintiff Julianne Huber is sixty-seven years old and is a permanent resident of Harrison County, Mississippi. She is an emergency physician and has been in Boston for work since November 8 and cannot vote in person on Election Day. Ms. Huber has voted in multiple elections since she became old enough to vote and is eager to vote in the November 27 runoff election.

26. Plaintiff Mississippi State Conference of the NAACP (hereinafter, MS NAACP) is a non-partisan, interracial, nonprofit membership organization headquartered in Jackson, MS. The mission of the MS NAACP is to eliminate racial discrimination through democratic processes and ensure the equal political, educational, social and economic rights of all persons, in particular African-Americans. The MS NAACP currently consists of 112 units, which include branches, college chapters, and youth councils with a revolving membership of over 11,000 members across the state and at least 1 member in 74 of the 82 counties in Mississippi. The MS NAACP works to protect voting rights through litigation, advocacy, legislation, communication and outreach. A considerable amount of the MS NAACP's work and resources are devoted to promoting voter registration, voter education, get-out-the-vote efforts, election protection and census participation. The MS NAACP, along with its branches, regularly conducts voter registration drives and other activities to help Mississippians vote absentee or in person throughout Mississippi. As a result of Mississippi's burdensome absentee voting procedures, the MS NAACP and its branches are forced to divert resources, including staff and volunteer time and money, to educating prospective voters about this scheme and helping them navigate the procedures so that they understand that unless they meet the many requirements (e.g., notarizing the absentee ballot request form and ballot, returning the ballot before election day, etc.), their vote will not be counted.

## DEFENDANTS

27. Defendant Delbert Hosemann is the Secretary of State of the State of Mississippi and is sued in his official capacity. As detailed on the Secretary of State's website, in his official capacity as head of the Elections Division, he is responsible for assuring that Mississippians'

voices are heard clearly through the election process, training elections officials, collecting election returns, and assisting local election officials in carrying out their election related responsibilities. Mississippi Secretary of State, *Elections & Voting*, http://www.sos.ms.gov/Elections-Voting/Pages/default.aspx. Secretary Hosemann is the chief election officer for the purposes of the National Voter Registration Act. Miss. Code Ann. § 23-15-211.1. Secretary Hosemann is also responsible for implementing voting system standards under the Help America Vote Act and issuing supplementary instructions for the safe and efficient use of electronic voting systems. Miss. Code Ann. §§ 23-15-169.5, 23-15-525.

28. Defendant Kimberly P. Turner is the Assistant Secretary of State of the Elections Division and is sued in her official capacity. In that capacity, she has authority under the direction and supervision of the Secretary of State to "perform all of the duties required by law of that officer; and each [assistant] shall be liable to the pains and penalties to which the secretary of state is liable…and they shall devote their entire time and attention to the duties pertaining to the department of state as required by the general laws." Miss. Code Ann. § 7-3-71.

29. Defendant Phil Bryant is the Governor of the State of Mississippi and is sued in his official capacity. In that capacity, he is the supreme executive officer of the State. Miss. Code Ann. § 7-1-5. Governor Bryant is tasked with faithfully executing the laws of the State. *Id.* Defendant Mississippi State Board of Election Commissioners and its individual members Secretary Delbert Hosemann, Governor Phil Bryant, and Attorney General Jim Hood (collectively, "State Board") are sued in their official capacity. In that capacity, the State Board bears the responsibility for "approving the state ballot" for statewide races, such as U.S. Senate. Miss. Code Ann. § 23-15-211.

30. Defendant Office of the Election Commissioners of Harrison County is responsible for conducting all general and special elections including preparing, distributing, printing, and counting official ballots in Harrison County. Miss. Code Ann. § 23-15-359(9), § 23-15-523.

31. Defendant Office of the Election Commissioners of Hinds County is responsible for conducting all general and special elections including preparing, distributing, printing, and counting official ballots in Hinds County. Miss. Code Ann. § 23-15-359(9), § 23-15-523.

## FACTUAL ALLEGATIONS

### Timelines for Absentee Ballot Mailings

32. Election commissioners in each county must certify the official results of the election "within 10 days after the day of the election" and transmit the results from each county to the Secretary of State. Miss. Code Ann. § 23-15-603.

33. The certification date for the Tuesday, November 6 election was Friday, November 16.

34. The earliest circuit clerks could send out ballots for the runoff election therefore, was on Saturday, November 17th.

### Mississippi's Vote-By-Mail Procedures

35. In order to vote by absentee ballot, a voter may make a request for an absentee application orally, in writing, or by calling the circuit clerk's office. Miss. Code Ann. § 23-15-627, §23-15-657.

36. A voter must qualify under one of thirteen reasons to vote absentee including that the voter will be out-of-county on Election Day; the voter's studies or employment necessitates their absence from the county on Election Day; or the voter is a parent, spouse, or dependent of a

person with a temporary or permanent physical disability who is hospitalized outside his county of residence or more than fifty (50) miles away from his residence and the voter will be with such person on Election Day. Miss. Code Ann. § 23-15-713.

37. If a voter does not qualify under one of these thirteen reasons, he or she cannot vote by absentee ballot, even if the voter is otherwise eligible to vote but is unable to go to a polling place on Election Day.

38. Only county circuit clerks can distribute absentee ballot applications. Miss. Code Ann. § 23-15-627. Absentee ballot applications (except for applications by military and overseas voters who may use the Federal Post Card Application available online) must bear "the seal of the circuit or municipal clerk affixed to it and be initialed by the registrar or his deputy." *Id.* Applications cannot be reproduced except by the registrar of the county. *Id.*

39. The absentee ballot application includes a warning in boldface that making a "false statement" on an absentee ballot application and selling one's vote is punishable with a fine of up to $5,000 and a sentence of up to five years. Miss. Code Ann. § 23-15-627.

40. The application requires all applicants, except those who are "temporarily or permanently disabled" to have their application "notarized or signed by an official authorized to administer oaths for absentee balloting." Miss. Code Ann. § 23-15-627.

41. Mississippi does not make free notary services available to residents wishing to vote absentee so, if a notary requires payment for certifying a voter's absentee ballot application or absentee ballot, the voter must pay.

42. Once a request is made for an absentee ballot application, the county clerk can mail the application to the voter if the voter cannot appear at the clerk's office to complete the application in person. Miss. Code Ann. § 23-15-715(a)-(b).

43. After receiving a properly completed and notarized absentee ballot application, "the registrar shall send to such absent voter a proper absentee voter ballot within twenty-four (24) hours" of having received a notarized application, or "as soon thereafter as the ballots are available." Miss. Code Ann. § 23-15-715(a). Under Miss. Code Ann. § 23-15-631, the voter must then find a "postmaster," "postal supervisor," or "other officer having authority to administer an oath" to act as a witness and watch them complete the ballot.

44. After completing the ballot in front of an approved witness, the voter must then have the witness authenticate his or her signature with the cancellation stamp for the post office, if the witness is a postal worker, or sign a certificate with his or her title and address.

45. The ballot must be "received by the registrar by 5:00 p.m. on the date preceding the election" for it to be counted. Miss. Code Ann. § 23-15-637.

46. All ballots received after the 5 p.m. cutoff are not counted. Miss. Code Ann. § 23-15-647.

47. No state has the combination of requirements and early deadlines that Mississippi has. Mississippi is one of just three states that requires voters to ensure their ballots are *received* before Election Day, rather than just requiring ballots be postmarked by Election Day.

### A Significant Number of Voters Vote Absentee in Mississippi

48. According to a Report by the Election Assistance Commission, in the 2016 general election, Mississippi voters cast more than 100,000 absentee ballots, Election Assistance

Commission, *The Election Administration and Voting Survey: 2016 Comprehensive Report*, June 29, 2017, *23-24, https://www.eac.gov/assets/1/6/2016_EAVS_Comprehensive_Report.pdf.

49. According to an article by the Associated Press, 50,571 absentee ballots were requested in 2018, up from 25,395 ballots in 2014. The article states that absentee ballots account for four to five percent of Mississippi's total vote. Emily Wagster Pettus, *Mississippi election leader predicts strong voter turnout*, Associated Press, Oct. 31, 2018, https://www.mrt.com/news/article/Mississippi-election-leader-predicts-strong-voter-13352115.php.

50. In an article in the Clarion Ledger, Mississippi State Senator David Blount was quoted saying that the absentee voting process provides "a very tight window to vote." Jimmie E. Gates, *State holidays could impact absentee voting for runoff elections*, Clarion Ledger, Nov. 12, 2018, https://www.clarionledger.com/story/news/politics/2018/11/12/state-holidays-could-complicate-absentee-voting-mississippi/1942608002.

**Plaintiffs and Other Mississippians Will Be Disenfranchised in the November 27 Election and in Future Elections Due to Tight Absentee Ballot Mailing Timelines and Elaborate Procedural Requirements**

51. Plaintiffs are eligible Mississippi voters who are over the age of 18, U.S. citizens, and have lived in the State for more than thirty (30) days prior to the registration deadline. All of them are registered to vote and have voted in Mississippi in recent elections. Plaintiffs requested absentee ballot applications in Mississippi. Despite following the requirements and deadlines prescribed by the Mississippi Election Code, none of the Plaintiffs has received their absentee ballot application or absentee ballot.

52. Plaintiff Barbara O'Neil has not received her absentee ballot for the November 27, 2018 runoff election. She is currently in Tennessee and will remain there in the days preceding and on the day of the runoff election. On November 14, she called the Hinds County Circuit Clerk's Office to request an absentee ballot application to be sent to her temporary address in Memphis, Tennessee. On November 16, she received an absentee ballot application by postal mail. The absentee ballot application she received incorrectly listed her as having a temporary or permanent disability as the reason behind her needing to vote absentee. That same day, Ms. O'Neil called the Hinds County Circuit Clerk's Office and requested a second absentee ballot application. As of November 20, she has not received her absentee ballot. She is concerned that she will not be able to cast an absentee ballot in the runoff election due to the limited number of days left for her to receive, complete and have notarized, and send both the absentee application and the ballot to the Clerk's Office.

53. Plaintiff William Sewell is sixty-five years old, and a permanent resident of Harrison County, Mississippi. He has been in Boston since November 15 and cannot vote in person on Election Day. He voted in person in the November 6 election. On November 17, Mr. Sewell called the Harrison County Circuit Clerk's Office to request an absentee application and ballot for both he and his wife to be mailed to their Boston address. As of November 21, he has not received his absentee ballot or application.

54. Plaintiff Julianne Huber is sixty-seven years old and a permanent resident of Harrison County, Mississippi. She has been in Boston since November 8 and cannot vote in person on Election Day. She voted in person in the November 6 election. When she learned there was going to be a runoff election, she immediately called the county circuit clerk to request an

absentee ballot, but was told to call back later. When she called a second time a few days later, she was again told she could not yet request an absentee ballot for the runoff and would need to call back. She set an alarm to remind herself to call yet a third time, but got pulled into an emergency medical procedure, so asked her husband to call on her behalf. On November 17, her husband, William Sewell, called the Harrison County Circuit Clerk's Office to request an absentee application and ballot for himself and Julianne to be mailed to their Boston address. As of November 21st, she has not received her absentee ballot or application.

55. Plaintiff MS NAACP has had to divert resources – including staff time and money – to educate and help Mississippians navigate the burdensome absentee procedures so that they can participate in state and federal elections.

56. On November 16, the Lawyers' Committee for Civil Rights Under Law sent a letter to Secretary Hosemann requesting that all absentee ballots postmarked by November 27 be counted in the runoff election and that the Secretary of State issue accessible guidance on its website to prospective absentee voters in the upcoming election.

57. On November 20, Assistant Secretary Kim Turner responded to the letter stating that the Secretary of State did not have authority to extend the deadlines for counting absentee ballots. The letter and response are attached as Exhibit C.

## COUNT I: FUNDAMENTAL RIGHT TO VOTE
### 42 U.S.C. § 1983
**Threatened Infringement of the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments**

58. Plaintiffs incorporate and re-allege each of the foregoing paragraphs.

59. 42 U.S.C. § 1983 provides in pertinent part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the part injured in an action at law, suit in equity, or other proper proceeding for redress."

60. Defendants' actions described herein were taken under color of the laws of the State of Mississippi.

61. The First and Fourteenth Amendments of the United States Constitution protect the right to vote as a fundamental right. The First Amendment's guarantees of freedom of speech and association protect the right to vote and to participate in the political process. The right to vote is a fundamental constitutional right also protected by the due process and equal protection clauses of the Fourteenth Amendment. *See, e.g., Bush v. Gore*, 531 U.S. 98, 104-05 (2000); *Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 670 (1966) (Virginia's poll tax violates the Equal Protection Clause); *Anderson v. Celebrezze*, 406 U.S. 780, 786-87 (1983) (the right to vote is incorporated into the Due Process Clause).

62. Inherent in individuals' fundamental right to vote is the right to have one's vote counted and reported correctly, and to be as effective as the votes cast by other voters in the same election.

63. Current election procedures make it exceptionally difficult to vote absentee in Mississippi.

64. Eligibility for absentee voting is limited to only narrow categories of voters, and some categories of voters that are otherwise eligible to vote are not eligible for absentee voting.

65. Absentee ballot applications are not available online and must be on official seal. This burdens the right to vote because it requires voters to either appear in person or receive the ballot application via mail.

66. Voters cannot submit absentee ballot applications by electronic means. This burdens the right to vote because it requires voters to either appear in person or submit the application via mail, which may take several days to be received by a circuit clerk's office.

67. Voters may also have to pay additional money to send the application quickly if there is limited time before the election in order to attempt to get an absentee ballot.

68. Voters are also required to have both the absentee ballot envelope and application notarized, despite attesting to their identity and signing an acknowledgment of penalties up to $5,000 for including false information on both forms. This process also requires voters to find a notary or other official authorized to administer oaths, which adds more time to the absentee voting process and often involves fees that the voter will have to pay twice in order to comply with Mississippi law.

69. By not giving electors who vote absentee a reasonable opportunity to cast their ballot, the Defendants knowingly and severely burden and infringe upon the fundamental right to vote of the Plaintiffs and other, similarly-situated voters.

70. These imminently threatened and severe burdens and infringements on the fundamental right to vote that will be caused by Defendants' conduct are not outweighed or justified by, and

are not necessary to promote, any substantial or compelling state interest that cannot be accomplished by other, less restrictive means.

## COUNT II: FUNDAMENTAL RIGHT TO VOTE
## 42 U.S.C. § 1983

### Threatened Infringement of the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments in the November 27 Runoff Election

71. Plaintiffs incorporate and re-allege each of the foregoing paragraphs.

72. These procedures are unnecessarily and unduly burdensome under normal election situations. In the context of this year's runoff election, they render it virtually impossible for many voters to vote. Voters who seek to vote in the November 27 runoff election are required to complete these steps in roughly one week, and may also be required to pay for overnight shipping in an effort to cast the ballot and ensure that the ballot will be counted.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray that the Court:

- Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint;

- Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the strict deadline for receipt of absentee ballots, combined with the other stringent requirements of Mississippi law, violates Plaintiffs' constitutional right to vote;

- Issue an order requiring that Defendants: (a) update their websites to provide more easily accessible information to non-military and overseas Mississippians on how to vote absentee in this and all future elections; (b) end the practice of preventing Mississippians

from downloading or photocopying the absentee ballot application form; (c) permit electronic submission of the absentee ballot application form; and (d) relax the burdensome notary requirements imposed on absentee voters;

- Grant preliminary and permanent injunctive relief by ordering that Defendants: (a) discontinue enforcement of the current deadline for returning absentee ballots by mail; and, (b) take all necessary steps to count in the November 27 runoff election all valid absentee ballots cast by eligible voters, including those of Plaintiffs, if returned with a postmark indicating a date of mailing on or before November 27;

- Order Defendants to take all reasonable steps to provide adequate notice to the public of the extension of time by which to return their absentee ballots, including, without limitation, through press release to the media, and on Defendants' websites;

- Retain jurisdiction to render any and all further orders that this Court may deem necessary;

- Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute; and

- Grant Plaintiffs such other and further relief as may be just and equitable.

Respectfully submitted this 21st day of November, 2018.

/s/ Carroll Rhodes
Carroll Rhodes, Esq.
*Attorney for the Mississippi State Conference of the N.A.A.C.P.*
Mississippi Bar No. 5314
Law Offices of Carroll Rhodes
P.O. Box 588
Hazelhurst, MS 39083
Phone: 601 894-4323
Fax: 601 894-1464

Email: crhode@bellsouth.net

Ezra D. Rosenberg (*pro hac vice* to be filed)
Arusha Gordon (*pro hac vice* to be filed)
Pooja Chaudhuri (*pro hac vice* to be filed)
Jennifer Nwachukwu (*pro hac vice* to be filed)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Neil A. Steiner (*pro hac vice* to be filed)
DECHERT LLP
1095 6th Avenue
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

Julia Chapman (*pro hac vice* to be filed)
Jillian Taylor (*pro hac vice* to be filed)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2000
Facsimile: (215) 994-2222