IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BARABARA O'NEIL, WILLIAM SEWELL,
and JULIANNE HUBER,

               Plaintiffs,

v.

DELBERT HOSEMANN, in his official
capacity as Secretary of State of the State of
Mississippi, KIMBERLY P. TURNER, in her
official capacity as Assistant Secretary of State
of the Elections Division, PHIL BRYANT, in
his official capacity as Governor of the State of
Mississippi, and the MISSISSIPPI STATE
BOARD OF ELECTION COMMISSIONERS,
and its individual members, SECRETARY
DELBERT HOSEMANN, GOVERNOR PHIL
BRYANT, and ATTORNEY GENERAL JIM
HOOD, OFFICE OF ELECTION
COMMISSIONERS OF HARRISON
COUNTY and OFFICE OF ELECTION
COMMISSIONERS OF HINDS COUNTY,

               Defendants.

Civil Action File No.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Celebrezze,*
460 U.S. 780 (1983) ............................................................................................6

*Ayers-Schaffner v. DiStefano,*
860 F. Supp. 918 (D.R.I.), *aff'd,* 37 F.3d 726 (1st Cir. 1994) ........................7

*Burdick v. Takushi,*
504 U.S. 428 (1992) ............................................................................................6

*Charles H. Wesley Educ. Found., Inc. v. Cox,*
408 F.3d 1349 (11th Cir. 2005) ........................................................................9

*Cherokee Pump & Equip. Inc. v. Aurora Pump,*
38 F.3d 246 (5th Cir. 1994) ..............................................................................5

*Council of Alt. Political Parties v. Hooks,*
121 F.3d 876 (3d Cir. 1997) ..............................................................................8

*Crawford v. Marion Cnty. Election Bd.,*
553 U.S. 181 (2008) .........................................................................................6, 7

*Florida State Conference of N.A.A.C.P. v. Browning,*
522 F.3d 1153 (11th Cir. 2008) ........................................................................7

*Janvey v. Alguire,*
647 F.3d 585 (5th Cir. 2011) ..............................................................................5

*League of Women Voters of N.C. v. N. Carolina,*
769 F.3d 224 (4th Cir. 2014), *cert. denied,* 135 S. Ct. 1735 (2015)..................7

*McCutcheon v. Fed. Election Comm'n,*
134 S. Ct. 1434 (2014) (plurality opinion) .......................................................1

*Murphree v. Winter,*
589 F. Supp. 374 (S.D. Miss. 1984) ..................................................................9

*Norman v. Reed,*
502 U.S. 279 (1992) .........................................................................................6, 7

*Ne. Ohio Coalition for the Homeless v. Husted,*
696 F.3d 580 (6th Cir. 2012) ............................................................................7

*Draft*
*Privileged & Confidential*

*Obama for Am. v. Husted*,
  697 F.3d 423 (6th Cir. 2012) ...............................................................................8, 9

*OCA Greater Houston v. Texas*,
  No. 15-679, 2016 WL 4597636 (W.D. Tex. Sept. 2, 2016) .................................8

*One Wisconsin Institute, Inc. v. Thomsen*,
  198 F. Supp. 3d 896 (W.D. Wis. 2016) ..............................................................7

*Project Vote v. Blackwell*,
  455 F. Supp. 2d 694 (N.D. Ohio 2006)................................................................7

*Taylor v. Louisiana*,
  419 U.S. 522 (1975) .............................................................................................8

*Texans for Free Enter. v. Texas Ethics Comm'n*,
  732 F.3d 535 (5th Cir. 2013) ...............................................................................9

*Touchston v. McDermott*,
  234 F.3d 1133 (11th Cir. 2000) ...........................................................................8

*United States v. Georgia*,
  892 F. Supp. 2d 1367 (N.D. Ga. 2012) ................................................................8

*Wesberry v. Sanders*,
  376 U.S. 1 (1964)..............................................................................................1, 6

*Whole Women's Health v. Paxton*,
  264 F. Supp. 3d 813, 818 (W.D. Tex. 2017)........................................................5

*Williams v. Salerno*,
  792 F.2d 323 (2d Cir. 1986) ................................................................................8

**Statutes**

Miss. Code Ann. § 7-1-5(a), (c)...............................................................................5

Miss. Code Ann. § 7-5-1............................................................................................5

Miss. Code Ann. § 23-15-11......................................................................................5

Miss. Code Ann. § 23-15-603....................................................................................2

Miss. Code. Ann. § 23-15-631...................................................................................3

Miss. Code Ann. § 23-15-637....................................................................................3

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Barbara O'Neil, William Sewell, Julianne Huber and Mississippi State Conference of the NAACP (collectively "Plaintiffs") submit this memorandum of law in support of their emergency motion for a temporary restraining order and preliminary injunction requiring Defendants to take all action necessary to extend the deadline for absentee ballots to be returned by mail to be counted in the November 27th senatorial runoff election. Defendants' refusal to extend the deadline for completing the burdensome absentee voting process they administer violates the fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution.

## I.    INTRODUCTION AND BACKGROUND

"There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1440-41 (2014) (plurality opinion). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). A temporary restraining order is needed to prevent the disenfranchisement of hundreds, if not thousands, of eligible prospective voters in next week's election, through no fault of their own.

Under Mississippi law, an absentee voter wishing to participate in the upcoming runoff election must navigate numerous administrative hurdles within an impossibly short timeframe. Because Mississippi law did not permit ballots for the runoff to be printed until after the November 6th election results were certified, and because the deadline for certifying those results was November 16th, in many counties ballots were not mailed out until Saturday, November 17th. Even under the most expeditious mail service, most absentee voters will not receive their runoff ballot until the Wednesday or Friday of Thanksgiving week. Assuming everything works like clockwork, the voters must then complete the ballots, find a notary or someone else authorized

to take oaths to act as an "attesting witness" over the holiday weekend, and miraculously find a way to mail their ballots back to their county circuit clerk's office such that they are *received* by 5 p.m. that Monday, in order to have their votes counted.[2] Needless to say, many, if not most, absentee ballots voted by mail will not be received in time, disenfranchising those Mississippians who were not able to vote in-person on Election Day.

This Motion seeks limited but urgently needed relief: Defendants should be ordered to extend the deadline such that absentee ballots are accepted if they are *postmarked* by the date of the runoff election. As explored in greater detail below, this Motion should be granted to preserve the right of all eligible Mississippians to vote and to have their voted counted.

## II.    FACTUAL BACKGROUND

### A.    Parties

Individual plaintiffs are all permanent residents of Mississippi who have voted and intend to continue voting in Mississippi. All individual plaintiffs are traveling or otherwise out-of-county and will not be home on November 27th, the day of the runoff election. The only possible way Plaintiffs can vote in the runoff election is through absentee vote-by-mail procedures.

Plaintiff Barbara O'Neil has not received her absentee ballot for the November 27, 2018 runoff election. She is currently in Tennessee and will remain there in the days preceding and on the day of the runoff election. On November 14, she called the Hinds County Circuit Clerk's Office to request an absentee ballot application to be sent to her temporary address in Memphis,

---

[2]    The burdensome nature of these requirements are themselves violative of the right to vote. For purposes of this emergent motion only, Plaintiffs do not challenge these requirements in themselves, but rather the impact of these requirements within the special circumstances of the extremely limited time to obtain and cast an absentee ballot for the runoff.

Tennessee. On November 16, she received an absentee ballot application by postal mail. The absentee ballot application she received incorrectly listed her as having a temporary or permanent disability as the reason behind her needing to vote absentee. That same day, Ms. O'Neil called the Hinds County Circuit Clerk's Office and requested a second absentee ballot application. As of November 20, she has not received her absentee ballot. She is concerned that she will not be able to cast an absentee ballot in the runoff election due to the limited number of days left for her to receive, complete and have notarized, and send both the absentee application and the ballot to the Clerk's Office.

Plaintiff William Sewell has not received his absentee ballot application or ballot. He is sixty-five years old, and a permanent resident of Harrison County, Mississippi. He has been in Boston since November 15 and cannot vote in person on Election Day. He voted in person in the November 6 election. On November 17, Mr. Sewell called the Harrison County Circuit Clerk's Office to request an absentee application and ballot for both he and his wife to be mailed to their Boston address. As of November 21st, he has not received his absentee ballot or application.

Plaintiff Julianne Huber is sixty-seven years old and a permanent resident of Harrison County, Mississippi. She has been in Boston since November 8 and cannot vote in person on Election Day. She voted in person in the November 6 election. When she learned there was going to be a runoff election, she immediately called the county circuit clerk to request an absentee ballot, but was told to call back later. When she called a second time a few days later, she was again told she could not yet request an absentee ballot for the runoff and would need to call back. She set an alarm to remind herself to call yet a third time, but got pulled into an emergency medical procedure, so asked her husband to call on her behalf.  On November 17, her husband, William Sewell, called the Harrison County Circuit Clerk's Office to request an

absentee application and ballot for himself and Julianne to be mailed to their Boston address. As of November 21st, she has not received her absentee ballot or application.

Plaintiff Mississippi State Conference of the NAACP (hereinafter, MS NAACP) is a non-partisan, interracial, nonprofit membership organization headquartered in Jackson, MS. The mission of the MS NAACP is to eliminate racial discrimination through democratic processes and ensure the equal political, educational, social and economic rights of all persons, in particular African-Americans. The MS NAACP currently consists of 112 units, which include branches, college chapters, and youth councils with a revolving membership of over 11,000 members across the state and at least 1 member in 74 of the 82 counties in Mississippi. The MS NAACP works to protect voting rights through litigation, advocacy, legislation, communication and outreach. A considerable amount of the MS NAACP's work and resources are devoted to promoting voter registration, voter education, get-out-the-vote efforts, election protection and census participation. The MS NAACP, along with its branches, regularly conducts voter registration drives and other activities to help Mississippians vote absentee or in person throughout Mississippi. As a result of Mississippi's burdensome absentee voting procedures, the MS NAACP and its branches are forced to divert resources, including staff and volunteer time and money, to educating prospective voters about this scheme and helping them navigate the procedures so that they understand that unless they meet the many requirements (e.g., notarizing the absentee ballot request form and ballot, returning the ballot before election day, etc.), their vote will not be counted.

**B.     The Absentee Voting Process for the Runoff Election**

Under Mississippi code, results from an election must be certified within ten days; for the November 6th election, the deadline for certification was November 16th. Miss. Code Ann. § 23-15-603. In many counties, ballots for the runoff were not available until the general election was

certified on November 16th. Chaudhuri Decl.,at ¶¶ 3-6 attached as Exhibit A. In these counties, the earliest that clerks began sending absentee ballots was on Saturday, November 17th. *Id.* Because priority postal service takes approximately 2-3 days to deliver the ballots, most Mississippians who are voting by mail will receive their ballots on Wednesday, November 21st or Friday, November 23rd (the day after Thanksgiving) or later.[3] Absentee voters must then complete their ballots and, as required by Mississippi law, find a notary or someone else authorized to administer an oath to notarize their ballot.[4] Finally, in order to have their ballot counted, the voter must then ensure that their ballot is *received* by their county circuit clerk by 5pm on the Monday after Thanksgiving (November 26th).[5] Because of the tight timeframe, voters posting their ballots on Friday or Saturday will need to pay to overnight it, if it is to be received in time and if they are to have their votes counted.

---

[3]    Thanksgiving (November 22, 2018) is a federal holiday on which there is no postal service. https://about.usps.com/news/events-calendar/postal-holidays.htm. For estimates on how long mail delivery takes, see https://www.usps.com/priority-mail/map/.

[4]    Miss. Code. Ann. § 23-15-631 ("Instructions to Voters") states:

Any notary public, United States postmaster, assistant United States postmaster, United States postal supervisor, clerk in charge of a contract postal station, or other officer having authority to administer an oath or take an acknowledgment may be an attesting witness... If a postmaster, assistant postmaster, postal supervisor, or clerk in charge of a contract postal station acts as an attesting witness, his or her signature on the elector's certificate must be authenticated by the cancellation stamp of their respective post offices. If an officer having authority to administer an oath or take an acknowledgement acts as attesting witness, his or her signature on the elector's certificate, together with his or her title and address, but no seal, shall be required.

[5]    Miss. Code Ann. § 23-15-637 states that an absentee ballot returned by mail must be "received by the registrar by 5:00 p.m. on the date preceding the election" for it to be counted. *Id.*

While Plaintiffs do not know how many Mississippians have requested to have absentee ballots mailed to them for the runoff, at least 50,571 absentee ballots were requested for the November 6th general election this year.[6] Even if only a portion of those voters again request an absentee ballot to vote in the runoff, a significant number of Mississippians will be impacted by the State's burdensome absentee voting processes.

On November 16th, the Lawyers' Committee for Civil Rights and the Mississippi Center for Justice wrote to the Secretary of State, requesting that he extend the deadline for acceptance of absentee ballots to those postmarked by November 27th. On November 20th, the Secretary of State's Office responded that the deadline could not be extended.

The Defendants have the authority to remedy this violation of Mississippians' constitutional rights. The Secretary of State is one of the "official[s] responsible" for "voting system standards"[7] for the State and is the "chief election officer".[8] The website for the Secretary of State's office explains that Secretary's Elections Division has

> many roles in assuring that Mississippians' voices are heard clearly through the election process. These roles include training elections officials, collecting campaign finance and lobbying reports, managing the statewide voter registry, collecting election returns and assisting local election officials in carrying out their election related responsibilities.[9]

---

[6]     Bobby Harrison, *Record Voter Turnout Expected Based on Midterm Absentee Ballots*, MISSISSIPPI TODAY (Oct. 31, 2018), https://mississippitoday.org/2018/10/31/record-voter-turnout-expected-based-on-midterm-absentee-ballots/

[7]     *See* State of Mississippi Plan for Compliance with the Help America Vote Act at 20 (Aug. 12, 2003), http://www.sos.ms.gov/links/elections/home/tab5/StateHAVAPlanFinal.pdf.

[8]     *See True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 713 (S.D. Miss. 2014) (describing Secretary of State "Hosemann as [Mississippi's] chief election official.").

[9]     *See* Office of the Mississippi Secretary of State, *Elections & Voting*, http://www.sos.ms.gov/elections-voting/pages/default.aspx (last visited Nov. 20, 2018).

Individual county election commissioners certified the vote on November 16 and transmitted the results to the Secretary of State.  Despite the Election Division's role in "assisting local election officials in carrying out their election related responsibilities," in some counties, absentee ballots are being mailed out only a week before the election.

Similarly, the Governor bears responsibility for the burdensome process absentee voters must navigate. The Governor is the "supreme executive officer of the state" and is tasked with "see[ing] that the laws are faithfully executed". Miss. Code Ann. § 7-1-5(a), (c). He therefore has responsibility for seeing that Mississippi and federal law, including legal provisions concerning voting rights, are "faithfully executed." Finally, the Attorney General is the "chief legal officer and advisor for the state," and, as such, has a duty to ensure compliance with state and federal laws, including those related to voting. Miss. Code Ann. § 7-5-1.

Together, these Defendants make up the State Board of Election Commissioners, which has responsibility for "approving the state ballot" for statewide races.  Miss. Code Ann. § 23-15-211.

In addition, Defendants Office of the Election Commissioners of Harrison County and Hinds County are responsible for conducting all general and special elections including preparing, distributing, printing, and counting official ballots in Harrison County. Miss. Code Ann. § 23-15-359(9), § 23-15-523. County Defendants are therefore responsible for mailing ballots to Plaintiffs and ensuring that their votes are counted.

### III.   LEGAL STANDARDS

To obtain a temporary restraining order or preliminary injunction,[10] a plaintiff must establish: (a) a substantial likelihood of success on the merits; (b) a substantial threat of immediate and irreparable harm if the injunction is not issued; (c) that the threatened harm outweighs any harm that would come from the injunction, (d) that the injunction will not undermine the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994).  Plaintiffs here have satisfied each of these conditions.

### IV.   ARGUMENT

#### A.   Plaintiffs are Likely to Succeed on the Merits

Plaintiffs are likely to succeed on their claim that absentee voting procedures for Mississippians voting by mail, in the context of the limited amount of time between absentee ballots first being available (November 17) and the deadline for receipt of completed ballots (November 26), are unduly burdensome and a violation of their fundamental right to vote and that the Secretary of State should be ordered to extend the deadline for ballots returned by mail.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964). State election laws that burden the fundamental right to vote are subject to searching scrutiny.  As the Supreme Court explained in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), "[a] court considering a challenge to a state election law must weigh

---

[10]     The standard for securing a temporary restraining order and preliminary injunction is identical. *See Whole Women's Health v. Paxton*, 264 F. Supp. 3d 813, 818 (W.D. Tex. 2017).

'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). When the restriction on the right to vote is "severe," the restriction "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289 (1992). But "[h]owever slight [the] burden may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288-89).

If the deadline for returning absentee ballots by mail is not extended to those postmarked by the runoff election day, hundreds, if not thousands, of Mississippians will be prevented from exercising their fundamental right to vote. "[T]he basic truth [is] that even one disenfranchised voter—let alone several thousand—is too many[.]" *League of Women Voters of N.C. v. N. Carolina* ("*LOWV of N.C.*"), 769 F.3d 224, 244 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015). Laws precluding citizens from voting entirely impose a severe burden on the right to vote, and courts routinely so hold. *Northeastern Ohio Coalition for the Homeless v. Husted* ("*NEOCH*"), 696 F.3d 580 (6th Cir. 2012); *see also Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153 (11th Cir. 2008); *One Wisconsin Institute, Inc. v. Thomsen*, 198 F. Supp. 3d 896 (W.D. Wis. 2016); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694 (N.D. Ohio 2006); *Ayers-Schaffner v. DiStefano*, 860 F. Supp. 918 (D.R.I.), *aff'd*, 37 F.3d 726 (1st Cir. 1994).

The same is true here. Nothing justifies Defendants' refusal to extend the November 26th registration deadline. The absence of a state statute addressing this issue specifically obviously

does not justify Defendants' violation of the United States Constitution.[11]   The State thus has advanced no interest "sufficiently weighty" to justify even a "slight" burden on the right to vote, *Crawford*, 553 U.S. at 191, much less an interest of "compelling importance" that could justify the severe burdens at issue here, *Norman*, 502 U.S. at 289.   The tight timeframe and burdensome absentee processes are a problem of the state's own making, and the state can have no legitimate interest in forcing its citizens to pay the price—especially a price so great as complete disenfranchisement—for the state's error.

Plaintiffs are accordingly likely to prevail on the merits of their claim that Defendants' action violates their fundamental constitutional right to vote.

---

[11]   Notably, courts have ordered election officers to take similar action as that requested here when faced with circumstances that the legislature has not yet considered. *See e.g., Wilson v. Hosemann*, 185 So.3d 370, 380 (Miss. 2016) (where candidate brought action for declaratory and injunctive relief after his name was not placed on presidential primary election ballot, the Mississippi Supreme Court ordered the Secretary of State to add the candidate's name to the electronic Statewide Election Management System, so that it may be made available for primary elections); *New Virginia Majority Education Fund et al v. Virginia Department of Elections et al*, No. 1:16-CV-01319 (E.D. Va. Oct. 20, 2016) (ordering the defendants to take all action necessary to reopen and extend the voter registration deadline, despite the defendants' claim that they did not have explicit statutory authorization to do so); *St. Louis County Board of Election Commissioners v. McShane*, 492 S.W.3d 177 (Mo. App. 2016) (Statute designating the hours of voting at polling places violated constitutional right to vote as applied to voters in general municipal election who were unable to vote during designated time due to unavailability of ballots, and thus mandamus relief extending the polling hours by two hours in affected precincts was warranted); *People ex rel. Woodside v. Bd. of Inspectors of Election of 56th Election Dist.*, 389 N.Y.S.2d 242, 245-47 (N.Y. Sup. Ct. 1976) (holding that, where hundreds of valid voter registrations had been lost, requiring those people to obtain court orders confirming their eligibility to vote, election officials were required to accept their votes after closing time); *Lake v. State Bd. of Elections*, 798 F. Supp. 1199, 1202-03, 1207-08 (M.D.N.C. 1992) (three-judge court) (holding that the state court's decision to extend voting hours at all polling places in two counties in a statewide election due to voting machine malfunctions and long lines did not violate due process). *See also Scott v. Schedler*, 771 F.3d 831, 838-39 (5th Cir. 2014) (rejecting the Louisiana Secretary of State's claim that he lacked authority to enforce Section 7 of the National Voter Registration Act).

**B.      Plaintiffs Face a Substantial Threat of Immediate and Irreparable Harm.**

The violation of a citizen's right to vote is the quintessential irreparable injury justifying a temporary restraining order.  "[B]y finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000); *see also Obama for Am. v. Husted* ("*OFA*"), 697 F.3d 423, 436 (6th Cir. 2012); *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986); *OCA Greater Houston v. Texas*, No. 15-679, 2016 WL 4597636, at *5 (W.D. Tex. Sept. 2, 2016) (finding that the deprivation of the right to vote "cannot be undone with monetary relief").  Absent relief here, hundreds, if not thousands, of Mississippians will be disenfranchised as a result of Defendants' refusal to extend the deadline by which absentee ballots must be postmarked.  In these circumstances, Defendants cannot plausibly contest irreparable harm.

**C.      The harm to Plaintiffs outweighs any possible harm from the injunction.**

The balance of equities weighs heavily in favor of an injunction.  Beyond perhaps some minor administrative inconvenience, Defendants will face no legitimate burden if they are required to instruct election officials to accept absentee ballots mailed back with a November 27th postmark.

On the other hand, if the deadline is not extended, many Mississippians will be disenfranchised in a hotly contested senate election.  Under these circumstances, the equities strongly favor Plaintiffs.  *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) ("administrative convenience" cannot justify the deprivation of a constitutional right); *see also United States v. Georgia*, 892 F. Supp. 2d 1367, 1377 (N.D. Ga. 2012) (explaining that administrative burdens are "minor when balanced against the right to vote, a right that is essential to an effective democracy.").

-11-

**D.**     **An injunction is in the public interest.**

An injunction would ensure that all Mississippi voters have their ballot counted, and the public has a paramount interest in ensuring that every eligible citizen is able to vote.  "The fundamental right to vote is one of the cornerstones of our democratic society . . . [t]he threatened deprivation of this fundamental right can never be tolerated."  *Murphree v. Winter*, 589 F. Supp. 374, 382 (S.D. Miss. 1984) (finding that granting a preliminary injunction requiring access to absentee ballot would "clearly . . . not disserve the public interest.");  *see also Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *Obama for Am. v. Husted*, 697 F.3d 423, 426 (6th Cir. 2012) ("The public has a strong interest in exercising 'the fundamental political right' to vote.") (internal citation omitted).   Further, "injunctions protecting First Amendment freedoms are ***always in the public interest***." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (internal citations and quotations omitted) (emphasis added).

The consequences of Mississippi's burdensome absentee voting process are inevitable: Many Mississippians who have attempted in good faith to vote by absentee ballot will not have their ballot counted.  It is only through injunctive relief that these absentee votes can be duly counted.  Accordingly, injunctive relief giving Mississippians an opportunity to participate in the upcoming election would manifestly promote the public interest.

**V.     CONCLUSION**

For the reasons stated herein, the Court should enter a temporary restraining order requiring Defendants to take all action necessary to extend the deadline for absentee ballots to be returned by mail to be counted in the November 27th senatorial runoff election.

This the 26th day of November, 2018.

Respectfully submitted,
BARBARA O'NEIL WILLIAM SEWELL,
JULIANNE HUBER, and MISSISSIPPI
STATE CONFERENCE OF THE N. A. A. C. P.,

PLAINTIFFS

/s/ Carroll Rhodes
Carroll Rhodes, Esq., MSB # 5314
Law Offices of Carroll Rhodes
Post Office Box 588
Hazlehurst, MS 39083
Telephone (601) 894-4323
Facsimile: (601) 894-1464
Email: crhode@bellsouth.net
*Attorney for the Mississippi State Conference of the NAACP*

Ezra D. Rosenberg, Esq. (*pro hac vice* to be filed)
Arusha Gordon, E*sq.* (*pro hac vice* to be filed)
Pooja Chaudhuri, Esq.  (*pro hac vice* to be filed)
Jennifer Nwachukwu, Esq. (*pro hac vice* to be filed)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, D. C. 2005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Neil A. Steiner, Esq.  (*pro hac vice* to be filed)
DECHERT LLP
1095 6th Avenue
New York, NY 10036
Telephone: (202) 698-3500
Facsimile: (212) 698-3599

Julia Chapman, Esq. (*pro hac vice* to be filed)
Jillian Taylor, Esq. (*pro hac vice* to be filed)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2000
Facsimile: (215) 994-2222

## CERTIFICATE OF SERVICE

I, Carroll Rhodes, one of the attorneys for the Plaintiffs, hereby certify that I have caused the following Defendants to be personally served, by a process server, with a copy of the foregoing Memorandum of Law in Support of the Emergency Motion along with a summons and copy of the complaint filed in this case:

Honorable Jim Hood, Attorney General of the State of Mississippi
Honorable Phil Bryant, Governor of the State of Mississippi
Honorable Delbert Hosemann, Secretary of State of the State of Mississippi
Kimberly P. Turner c/o Office of the Secretary of State of the State of Mississippi
Office of Election Commissioners of Harrison County, Mississippi

This the 26th day of November, 2018.

/s/ Carroll Rhodes
Carroll Rhodes

# EXHIBIT A

## <u>DECLARATION OF POOJA CHAUDHURI</u>

Pursuant to 28 U.S.C. § 1746, I, Pooja Chaudhuri, hereby declare as follows:

1. I am employed as Associate Counsel in the Voting Rights Project of the Lawyers' Committee for Civil Rights Under Law.  I am admitted to practice law in California.

2. I have personal knowledge of the matters stated herein and would testify to the same if called to do so in Court.

3. On October 15, 2018, I called the Desoto County Circuit Clerk's Office to ask about the process for requesting an absentee ballot for the runoff election.  The Clerk informed me that a voter can make a telephonic request for an absentee ballot beginning November 17, by providing their name and the address to which the ballot should be mailed.  The Clerk further informed me that once the voter was verified in the statewide voter registry, the Clerk's Office would mail both the absentee application and ballot beginning November 17.  The Clerk stated that both the absentee ballot application and ballot must be notarized and received by the Clerk's Office by 5 p.m. on November 26.

4. On October 15, 2018, I called the Adams County Circuit Clerk's Office to ask about the process for requesting an absentee ballot for the runoff election.  The Clerk informed me that a voter can make a telephonic request

1

for an absentee ballot beginning November 17, by providing their name, date of birth, and address to which the ballot should be mailed. The Clerk further informed me that the Clerk's Office would mail both the absentee application and ballot to the voter beginning November 17. The Clerk stated that both the absentee ballot application and ballot must be notarized and received by the Clerk's Office by 5 p.m. on November 26.

5. On October 15, 2018, I called the Alcorn County Circuit Clerk's Office to ask about the process for requesting an absentee ballot for the runoff election. The Clerk informed me that a voter can make a telephonic request for an absentee ballot beginning November 17, by providing their name and the address to which the ballot should be mailed. The Clerk further informed me that the Clerk's Office would mail both the absentee application and ballot to the voter beginning November 17. The Clerk stated that both the absentee ballot application and ballot must be notarized and received by the Clerk's Office by 5 p.m. on November 26.

6. On October 15, 2018, I called the Amite County Circuit Clerk's Office to ask about the process for requesting an absentee ballot for the runoff election. The Clerk informed me that a voter can make a telephonic request for an absentee ballot beginning November 17, by providing their name and the address to which the ballot should be mailed. The Clerk further

informed me that once the voter was verified in the statewide voter registry, the Clerk's Office would mail both the absentee application and ballot beginning November 17.  The Clerk stated that both the absentee ballot application and ballot must be notarized and received by the Clerk's Office by 5 p.m. on November 26.

7. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of November, 2018, in Washington, D.C.

_____

Pooja Chaudhuri