UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BARBARA O'NEIL, ET AL.,                                                                                      PLAINTIFFS

V.                                                                        CIVIL ACTION NO. 3:18-CV-00815-DPJ-FKB

DELBERT HOSEMANN, ET AL.                                                                                  DEFENDANTS

ORDER

This civil action is before the Court on the Motion for Temporary Restraining Order [3] filed yesterday, November 26, 2018, by Plaintiffs Barabara O'Neil, William Sewell, Julianne Huber, and the Mississippi State Conference of the N.A.A.C.P. For the reasons that follow, the motion is denied.

I.      Background

Plaintiffs say Mississippi's absentee-ballot procedures deny the franchise to out-of-state and other voters wishing to vote absentee in the United States Senate runoff election between Cindy Hyde-Smith and Mike Espy. In general terms, they contend that the relevant code provisions do not provide adequate time to obtain a ballot after the general election is certified and then return it by mail before the statutory deadline for counting those votes in the runoff election.

Under Mississippi Code section 23-15-603, election results must be certified "within ten (10) days after the general election." Eligible voters wishing to vote by mail may then request— either orally or in writing—an application to vote absentee. *Id.* § 23-15-627. Within 24 hours of receiving that request, the registrar (circuit clerk) for the voter's resident county will take one of two actions. First, the registrar can mail the application to the voter. *Id.* In that case, the voter must complete the application; mail it back; wait for the registrar to then mail the ballot;

1

complete the ballot; and then mail it back to the county. *Id.* § 23-15-631(1)(c). Second, the registrar can mail the application and ballot together, in which case the voter must complete and return them in separate envelopes. *Id.* § 23-15-631(1)(d). In either event, the ballot must be "received" by 5:00 p.m. the day before the election. *Id.* § 23-15-637.

Plaintiffs correctly observe that this timeline is tight—if not impossible—for some voters. This is especially true where the registrar separately mails the application and ballot. For example, certification occurred Friday, November 16, 2018, and assuming a voter could request the application the very next day (Saturday), it likely would not have been mailed until Monday, November 19. Allowing two days for delivery, it would arrive Wednesday, November 21—the day before Thanksgiving. Not counting Thanksgiving, that would leave just four days to complete a process that includes three more mailings.

The process is obviously less burdensome for those voters in counties that send the ballots and the applications together. Indeed that happened with two of the three named plaintiffs in this case, William Sewell and Julianne Huber. As a result, Sewell and Huber actually voted within the applicable deadline. They therefore lack standing in this case and will be dismissed at the appropriate time.

Although the Complaint generally challenges the entire absentee-voting regimen on due-process and equal-protection grounds, Plaintiffs limited their arguments as to the requested temporary restraining order ("TRO"). Instead of seeking an order generally declaring the statutes unconstitutional, they seek an order that would extend the November 26 deadline under section 23-15-637 and count all votes *postmarked* by 5:00 p.m. on November 27, 2018—i.e., election day. They also desire an order instructing Defendants to provide notice to out-of-state

voters that the deadline has been extended so they can still vote if they mail their ballots before 5:00 p.m. today.

II.     Standing

As discussed below, binding precedent precludes the requested relief. For that reason—and given the incredibly short fuse—the Court will not dwell on standing. Nevertheless, the Court questions whether Plaintiffs named the correct defendants. In general terms, Plaintiffs sued Mississippi's Governor, Attorney General, Secretary of State, Assistant Secretary of State, and the election commissioners of Harrison and Hinds Counties. *See* Compl. [1] at 1. But under Mississippi's election statues, the registrars, i.e., circuit clerks, for each county are given the relevant tasks. This is a tricky issue under *Ex Parte Young*, yet it was superficially addressed in Plaintiffs' memorandum. So while they might be correct, it is not yet apparent.[1]

III.    Standards

A TRO is an "extraordinary remedy." *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) (citation omitted). The four elements for such relief are well known: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). To justify

---

[1] Generally speaking, Plaintiffs must show that some "act of the defendants has caused, will cause, or could possibly cause any injury to them." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (noting that defendants lacked "coercive power" to cause or redress injury). But in *OCA-Greater Houston v. Texas*, the Fifth Circuit held that standing existed as to Texas's Secretary of State in an election dispute because he was the state's "chief election officer." 867 F.3d 604, 613–14 (5th Cir. 2017). The Mississippi Secretary of State holds that same title, but the statutory duties are more limited than in Texas. *See* Miss. Code. Ann. § 23-15-211.1. Accordingly, this issue will need further attention.

entry of a TRO, Plaintiffs must "clearly carr[y] the burden of persuasion on all four elements." *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citation and quotation marks omitted).

IV. Analysis

There are two related problems with Plaintiffs' requested relief—it is too late and disturbs the status quo. As stated above, Plaintiffs seek an order that would change the absentee-ballot deadline. Under section 23-15-637, the ballots are counted if *received* by 5:00 p.m., November 26, 2018, i.e. yesterday. Plaintiffs say all ballots *postmarked* by today at 5:00 p.m. should be counted and that Defendants should notify the mostly out-of-state voters affected by the statute that they can still mail their ballots today.

"The Supreme Court has repeatedly instructed courts to carefully consider the importance of preserving the status quo on the eve of an election." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir.), *aff'd*, 135 S. Ct. 9 (2014). For example, in the apportionment context, the Court held that "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

The Fifth Circuit relied on *Reynolds* and other similar cases in *Veasey v. Perry*, where a district court enjoined Texas voter-identification laws just nine days before the early voting period and 24 days before the election. 769 F.3d at 891. On appeal, the Fifth Circuit stayed the injunction, applying the four-factor test for stays. *See id.* at 893. That test substantially overlaps

with the four-factor test for TROs because the tests address "similar concerns." *Id.* at 893 n.1.[2] The Fifth Circuit stayed the injunction "[p]articularly in light of the importance of maintaining the status quo on the eve of an election." *Id.* at 895. The same is true here.

    A.    Substantial Likelihood of Success

Plaintiffs have not shown a substantial likelihood of success primarily because today is election day. In *Veasey*, the issue was fully litigated—including a lengthy trial—and the district court entered its order nine days before the election. Nevertheless, the Fifth Circuit held that "the State . . . made a strong showing that it is likely to succeed on the merits, at least as to its argument that the district court should not have changed the voting identification laws on the eve of the election." *Id.* Plaintiffs filed this suit last week, on November 21, 2018, and they filed their motion seeking a TRO yesterday—the same day the disputed deadline expired. Thus, Plaintiffs are seeking retroactive relief on election day.

Plaintiffs addressed *Veasey* during this morning's hearing, arguing that extending the deadline by one day is not as complicated as precluding voter-identification laws just before the vote. On some level the argument is correct, but it fails to fully account for binding authority or the impact of what they seek. To begin, the Supreme Court stayed an injunction in *Husted v. Ohio State Conference of N.A.A.C.P.*, where the Sixth Circuit had required the state to provide additional early in-person voting hours. 135 S. Ct. 42 (2014). Changing the rules in this case would be more difficult. As Defendants argued, the statutory framework requires receipt of absentee ballots by a certain time and date so they can be distributed to the individual polls, counted, and subjected to the same public scrutiny that applies to other ballots. *See* Miss. Code

---

[2] The most significant difference as applied to this case is that the state had the burden in *Veasey* because it was seeking a stay.

Ann. §§ 23-15-637, 23-15-247, 23-15-251, 23-15-639, 23-15-643, 23-15-591, 23-15-651, and 23-15-603. Plaintiffs have not shown a likelihood of success on the merits.

B.      Substantial Threat of Irreparable Injury

Under the current statutory scheme, absentee ballots received after November 26 at 5:00 p.m. are not counted. But, they are marked as being late, and the time is noted. Miss. Code Ann. § 23-15-637. Those ballots are then maintained for 22 months. *See* 52 U.S.C. § 20701; Miss. Code Ann. § 23-15-647. Thus, if appropriate, the late ballots would be available for counting at any point before certification. Plaintiffs acknowledged as much during the hearing but observed that those who might wish to vote absentee today would lose their right, and it could not be restored after certification. The Court acknowledges this possibility, but it does not outweigh the other factors.

C.      Weighing the Harms and Whether Granting the Injunction Disserves Public Interest

While there may be some harm to those voters who would like to cast absentee ballots today, those harms are outweighed by the harm a TRO would cause. To begin, the hearing on this matter did not conclude until late this morning, election day, and the Court is not convinced that in the remaining time Defendants could effectively notify out-of-state voters that they could mail their ballots by 5:00 p.m. The resulting confusion from that effort is obvious.

Even assuming that notice could be provided, it would mean that different voters would be operating under different laws. Those that followed the instructions on their absentee ballots may have forgone voting because the deadline passed. Others might receive word and be able to cast a vote. Again, the confusion is evident.

Aside from that confusion and resulting disparity, the request is overly broad. As noted, some counties mail the applications and ballots together. Plaintiffs do not know how many of

6

the 82 counties followed that procedure, but it was followed for two of the three named plaintiffs, and they both cast timely votes.

States have a right to properly regulate voting. *See Burdick v. Takushi*, 504 U.S. 428, 441 (1992) (holding that "right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system"). Yet by moving the deadline as requested, there will be an unknown number of ballots counted that could have complied with the statute but failed to do so. This would also lead to considerable confusion tonight when the ballots are counted. As noted before, granting the requested relief would impact a host of election laws that exist to promote a transparent and efficient election process.

Finally, the status quo protects those that have mailed their votes. If at some point it is determined that the votes should be counted, those ballots are preserved under state and federal law. By contrast, ordering the counties to count the ballots would give the remaining plaintiff complete relief that, according to Defendants' unrebutted assertion, could not be undone at a later date. In other words, they cannot be uncounted if counted in error.

In his concurring opinion in *Veasey*, Judge Costa observed that the district court found the disputed voting laws to be discriminatory. 769 F.3d at 896 (Costa, J., concurring). So too, at this very early stage of this case, the Court is concerned about the process for voting absentee by mail in runoffs. But as Judge Costa noted, "we must follow the dictates of the Supreme Court." *Id.* And "the only constant principle that can be discerned from the Supreme Court's recent decisions in this area is that its concern about confusion resulting from court changes to election laws close in time to the election should carry the day in the stay analysis." *Id.* The same is true today. Plaintiffs have not met their burden.

V. Conclusion

For the reasons stated, Plaintiffs' Motion for TRO is denied.

**SO ORDERED AND ADJUDGED** this the 27th day of November, 2018.

 s/ *Daniel P. Jordan III*
 CHIEF UNITED STATES DISTRICT JUDGE