**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| BARABARA O'NEIL, WILLIAM SEWELL, JULIANNE HUBER, MAGGIE GEORGE, and MISSISSIPPI STATE CONFERENCE OF THE N.A.A.C.P., <br><br> Plaintiffs, <br><br> v. <br><br> DELBERT HOSEMANN, in his official capacity as Secretary of State of the State of Mississippi, KIMBERLY P. TURNER, in her official capacity as Assistant Secretary of State of the Elections Division, PHIL BRYANT, in his official capacity as Governor of the State of Mississippi, JIM HOOD, in his official capacity as Attorney General of the State of Mississippi, and the MISSISSIPPI STATE BOARD OF ELECTION COMMISSIONERS, and its individual members, SECRETARY DELBERT HOSEMANN, GOVERNOR PHIL BRYANT, and ATTORNEY GENERAL JIM HOOD, <br><br> Defendants. | Civil Action No. 3:18-cv-00805815-DPJ-FKB |

**FIRST AMENDED COMPLAINT**

Plaintiffs Barbara O'Neil, William Sewell, Julianne Huber, Maggie George, and the Mississippi State Conference of the N.A.A.C.P. (collectively, "Plaintiffs") allege as follows:

**INTRODUCTION**

1.      This action concerns the onerous and costly process Mississippians must navigate in order to cast an absentee ballot if they are unable to vote in person on Election Day.

2.      Taken as a whole, Mississippi's absentee ballot procedures are among the most, if not the most, burdensome in this country.

3.      A Mississippian wishing to vote by absentee ballot must satisfy one of a limited number of excuses in order to request an absentee ballot and then the voter must get *both* their request form *and* their absentee ballot notarized or otherwise signed by an official authorized to administer oaths.   Mississippi is the only state with both of these burdensome and costly requirements.

4.      In addition, Mississippi does not make the absentee application form available for download from the internet and prohibits use of photocopies of the form, thereby requiring the voter to travel to the circuit clerk's office to pick up an original of the application or wait for it to be mailed to them.

5.      To make matters worse, Mississippi is one of just three states in the nation that requires absentee ballots to be received *before* Election Day, making the timeframe by which Mississippians must complete the arduous absentee voting process even shorter.

6.      This burdensome process is difficult to navigate in the best of circumstances. When compounding circumstances—such as an inability to pay for or find notary services, or a delay in postal delivery or run-off elections—add further complications, it becomes impossible.

7.      As described in more detail below, because county circuit clerks have ten days to certify election results after an election, and because runoff elections must be held three weeks after an election if a candidate does not receive a majority of the votes, Mississippians voting absentee have only a few days—days that often fall over the Thanksgiving holiday—to complete the absentee voting process.

8.      Individual plaintiffs are permanent residents of Mississippi who have voted and intend to continue voting in Mississippi. All individual plaintiffs requested absentee ballots for the 2018 runoff election.

9.      Due to continuing work and familial obligations, individual plaintiffs expect that they are likely to be away from their homes during future elections and will therefore need to vote by absentee ballot.

10.     For these reasons, and as alleged in detail below, Plaintiffs respectfully request that this Court issue a declaratory judgment that Mississippi's burdensome and stringent absentee voting requirements violate the fundamental right to vote as guaranteed by the First and Fourteenth Amendments to the United States Constitution.  Plaintiffs also request that this Court grant injunctive relief ordering Defendants to, among other things, clarify who constitutes an "official authorized to administer oaths for absentee balloting" and better educate the general public and county and state election officials as to the absentee voting process.

## JURISDICTION AND VENUE

11.      This action arises under the Due Process and Equal Protection Clauses of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

12.      This Court has subject matter jurisdiction over the claim raised in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (jurisdiction over civil rights actions).

13.      This Court has authority to grant both declaratory and injunctive relief pursuant to § 2201 (authority to grant declaratory relief) and § 2202 (authority to grant relief ancillary to declaratory judgment), in addition to its authority under the Civil Rights Act and its inherent equitable powers.

14.      The Court has personal jurisdiction over Defendants Mississippi Secretary of State Delbert Hosemann, Mississippi Governor Phil Bryant, Assistant Secretary of Elections Kimberly

P. Turner, Mississippi Attorney General Jim Hood, and the State Board of Election Commissioners and their individual members, whose principal offices are in Jackson, Mississippi.

15.     Venue lies in the Southern District of Mississippi pursuant to 28 U.S.C. § 1391(b) because all Defendants are residents of Mississippi, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred and will occur in this judicial district.

<u>**PLAINTIFFS**</u>

16.     Plaintiff Barbara O'Neil is eighty-seven years old and is a permanent resident of Hinds County, Mississippi. She visited family in Tennessee in the days leading up the November 27 runoff election, and had initially applied for an absentee ballot. When she did not receive the ballot in time to mail it, Ms. O'Neil made a special effort to vote in person in the runoff election. Ms. O'Neil anticipates having to vote absentee in the future because she frequently makes extended visits to her adult children in Tennessee throughout the year.

17.     Plaintiff William Sewell is sixty-six years old and is a permanent resident of Harrison County, Mississippi, where he and his wife Julianne Huber have owned a house for the past thirteen years. A professor at Harvard Medical School, Mr. Sewell plans to retire in Harrison County within the next few months. Mr. Sewell is the founder of a biotech company in Boston, Massachusetts. His daughter lives in Maine. Mr. Sewell anticipates having to vote absentee in the future due to work or family commitments that require him to travel to Massachusetts or Maine.

18.     Plaintiff Julianne Huber is sixty-seven years old and is a permanent resident of Harrison County, Mississippi, where she and her husband, William Sewell, have owned a house for the past thirteen years. She is an emergency physician in Boston. She plans to permanently relocate to Mississippi with her husband. Her daughter lives in Maine. Ms. Huber anticipates having to vote absentee in the future because she visits her daughter in Maine.

19.     Plaintiff Maggie George is a permanent resident of Oktibbeha County, Mississippi. Currently, she is a student in Massachusetts and is in the second year of a graduate program in design at Harvard University.  Because she anticipates staying in Massachusetts for the next few years to pursue her PhD, Ms. George anticipates having to vote absentee in the future, including during the 2019 state legislature and gubernatorial elections.

20.     Plaintiff Mississippi State Conference of the N.A.A.C.P. (hereinafter, MS NAACP) is a non-partisan, interracial, nonprofit membership organization headquartered in Jackson, MS. The mission of the MS NAACP is to eliminate racial discrimination through democratic processes, to protect the rights of voters, and ensure the equal political, educational, social, and economic rights of all persons, in particular African-Americans.  The MS NAACP currently consists of 112 units, which include branches, college chapters, and youth councils with a revolving membership of over 11,000 members across the state and at least 1 member in 74 of the 82 counties in Mississippi. The MS NAACP works to protect voting rights through litigation, advocacy, legislation, communication and outreach.  A considerable amount of the MS NAACP's work and resources are devoted to promoting voter registration, voter education, get-out-the-vote efforts, election protection, and census participation.  The MS NAACP, along with its branches, regularly conducts voter registration drives and other activities to help Mississippians vote absentee or in person throughout Mississippi. As a result of Mississippi's burdensome absentee voting procedures, the MS NAACP and its branches are forced to divert resources, including staff and volunteer time and money, to educating prospective voters about this scheme and helping them navigate the procedures so that they understand that unless they meet the many requirements (e.g., notarizing the absentee ballot request form and ballot, returning the ballot before election day,

etc.), their vote will not be counted. Some MS NAACP members have voted by absentee ballot in past elections and most likely will vote by absentee ballot in future elections.

## **DEFENDANTS**

21. Defendant Delbert Hosemann is the Secretary of State of the State of Mississippi and is sued in his official capacity. As detailed on the Secretary of State's website, in his official capacity as head of the Elections Division, he is responsible for assuring that Mississippians' voices are heard clearly through the election process, training elections officials, collecting election returns, and assisting local election officials in carrying out their election related responsibilities. Mississippi Secretary of State, "Elections & Voting" (last accessed Dec. 20, 2018), http://www.sos.ms.gov/Elections-Voting/Pages/default.aspx. Secretary Hosemann is the chief election officer for the purposes of the National Voter Registration Act. Miss. Code Ann. § 23-15-211.1. Secretary Hosemann is also responsible for implementing voting system standards under the Help America Vote Act and issuing supplementary instructions for the safe and efficient use of electronic voting systems. *Id.* at §§ 23-15-169.5, 23-15-525. Under § 25-33-33 of the Mississippi Code, the Secretary of State may prescribe forms and establish fees for services not otherwise provided by law.  In addition, under Miss. Code Ann. § 25-33-1, the Secretary of State is responsible for issuing notary public commissions on behalf of the Governor to all qualified applicants. The Secretary of State has authority to promulgate regulations under the Mississippi Administrative Procedures Act. Miss. Code Ann. § 25-43-1.101, *et. seq.* The Secretary of State's Office also reviews the Mississippi Election Code "for potential updates and revisions" to present to the State Legislature for consideration.  In 2016, Secretary of State's Office formed the Election Code Study Group, comprised of legislators, circuit clerks, election commissioners, political parties, district attorneys, and interested citizens, "to discuss current State election laws and

determine which revisions or updates would promote security of the ballot, efficiency of the election system and transparency." Mississippi Secretary of State, "2016 Election Law Reform Committee" (last accessed Dec. 20, 2018), https://bit.ly/2rQ47mJ.

22.     Defendant Kimberly P. Turner is the Assistant Secretary of State of the Elections Division and is sued in her official capacity. In that capacity, she has authority under the direction and supervision of the Secretary of State to "perform all of the duties required by law of that officer; and each [assistant] shall be liable to the pains and penalties to which the secretary of state is liable . . . and they shall devote their entire time and attention to the duties pertaining to the department of state as required by the general laws." Miss. Code Ann. § 7-3-71.

23.     Defendant Phil Bryant is the Governor of the State of Mississippi and is sued in his official capacity. In that capacity, he is the supreme executive officer of the State.  Miss. Code Ann. § 7-1-5. Governor Bryant is tasked with faithfully executing the laws of the State. *Id.* Under § 25-33-1, the Governor may appoint notaries public who may serve in any or all counties of this state.

24. Defendant Jim Hood is the Attorney General of Mississippi and is sued in his official capacity. In that capacity, he serves as the chief legal officer and advisor for the state and is charged with managing all litigation on behalf of the state, except as otherwise specifically provided by law. As Attorney General, Defendant Hood is responsible for "interven[ing] [and arguing] the constitutionality of any statute when notified of a challenge thereto." Miss. Code Ann. § 7-5-1. Qualifications, elections and duties.

25.     Defendant Mississippi State Board of Election Commissioners and its individual members Secretary Delbert Hosemann, Governor Phil Bryant, and Attorney General Jim Hood (collectively, "State Board") are sued in their official capacity. In that capacity, the State Board bears the

responsibility for, among other things, "approving the state ballot" for statewide races, such as those for the U.S. Senate.  Miss. Code Ann. § 23-15-211.

# FACTUAL ALLEGATIONS
## Timelines for Absentee Ballot Mailings and Runoff Elections

26.     Election commissioners in each county must certify the official results of the election "within 10 days after the day of the election" and transmit the results from each county to the Secretary of State. Miss. Code Ann. § 23-15-603.

27.     The certification date for the runoff election of the 2018 general election held on Tuesday, November 6 election was Friday, November 16, 2018.

28.     General elections are held the Tuesday following the first Monday in November in an election year.

29.     Under Miss. Code. Ann. § 23-15-981, runoff elections are held three weeks after a general election, if no candidate for an office receives a majority of the vote.

30.     Veterans Day falls on November 11th of each year.

31.     Thanksgiving Day is celebrated on the fourth Thursday of November of each year.

32.     Mississippi's practice of allowing ten days for counties to certify election results, while also requiring runoff elections to be held three weeks (21 days) after a general election, means that Mississippians wishing to vote absentee have just eleven days to complete the absentee voting process, including receiving an original copy of the application for an absentee ballot and getting both the application and absentee ballot notarized or otherwise signed by an official authorized to administer oaths, and returned via mail before the runoff election.

33.     Because the United States Postal Service, government offices (such as county election boards), and many businesses—including notary services—are closed on federal holidays, such as

Veterans Day and Thanksgiving, voters may have even less time to complete the entire absentee voting process.

34.     Many Mississippians who wanted to vote absentee in the November runoff election in 2018 were unable to do so because, even though they requested an absentee ballot as soon as possible after election results from the general election were certified, they did not receive their ballots until after the election.

35.     In 2019, according to Defendants' Elections Division calendar, primary elections are scheduled for August 6, 2019, the primary runoff is scheduled for August 27, 2019, and the general election is scheduled for November 5, 2019, making it likely that Plaintiffs and other Mississippi voters wishing to vote absentee experience the same problems satisfying the tight time frame for completing the absentee process as they experienced during the November runoff.

### Mississippi's Vote-By-Mail Procedures

36.     In order to vote by absentee ballot, a voter may make a request for an absentee application orally, in writing, or by calling the circuit clerk's office. Miss. Code Ann. §§ 23-15-627, 23-15-657.

37.     A voter must qualify under one of thirteen reasons to vote absentee including that the voter will be out-of-county on Election Day; the voter's studies or employment necessitates their absence from the county on Election Day; or the voter is a parent, spouse, or dependent of a person with a temporary or permanent physical disability who is hospitalized outside his county of residence or more than fifty (50) miles away from his residence and the voter will be with such person on Election Day. Miss. Code Ann. § 23-15-713.

38.     If a voter does not qualify under one of these thirteen reasons, he or she cannot vote by absentee ballot, even if the voter is otherwise eligible to vote but is unable to go to a polling place on Election Day.

39.     Only circuit clerks can distribute absentee ballot applications.  Miss. Code Ann. § 23-15-627. Absentee ballot applications (except for applications by military and overseas voters who may use the Federal Post Card Application available online) must bear "the seal of the circuit or municipal clerk affixed to it and be initialed by the registrar or his deputy." *Id.* Applications cannot be reproduced except by the registrar of the county. *Id.*

40.     The absentee ballot application includes a warning in boldface that making a "false statement" on an absentee ballot application and selling one's vote is punishable with a fine of up to $5,000 and a sentence of up to five years. Miss. Code Ann. § 23-15-627.

41.     The application requires all applicants, except those who are "temporarily or permanently disabled" to have their application "notarized or signed by an official authorized to administer oaths for absentee balloting."  Miss. Code Ann. § 23-15-627. Mississippi does not provide voters with a list of "official[s] authorized to administer oaths for absentee balloting," nor does Mississippi inform voters which type of officials might qualify as an attesting witness for absentee ballot purposes.

42.     Once a request is made for an absentee ballot application, the county clerk can mail the application to the voter if the voter cannot appear at the clerk's office to complete the application in person. Miss. Code Ann. § 23-15-715(a)-(b).

43.     After receiving a properly completed and notarized absentee ballot application, "the registrar shall send to such absent voter a proper absentee voter ballot within twenty-four (24) hours" of having received a notarized application, or "as soon thereafter as the ballots are

available." Miss. Code Ann. § 23-15-715(a). Under Miss. Code Ann. § 23-15-631, the voter must then find a "postmaster," "postal supervisor," or "other officer having authority to administer an oath" to act as a witness and watch them complete the ballot.

44.    After completing the ballot in front of an approved witness, the voter must then have the witness authenticate his or her signature with the cancellation stamp for the post office, if the witness is a postal worker, or sign a certificate with his or her title and address.  Miss. Code Ann. § 23-15-631.

45.    An absentee ballot must be "received by the registrar by 5:00 p.m. on the date preceding the election" for it to be counted. Miss. Code Ann. § 23-15-637.

46.    All ballots received after the 5 p.m. cutoff are not counted. Miss. Code Ann. § 23-15-647.

47.    No state has the combination of requirements—including getting both one's absentee ballot application *and* one's absentee ballot notarized or otherwise signed by an official authorized to administer oaths—and early deadlines that Mississippi has.

48.    Mississippi is one of just three states that require voters to ensure their ballots are *received before* Election Day, rather than just requiring ballots be postmarked by Election Day.

**Defendants' Failure to Train Election Workers and Educate Voters Regarding Absentee Balloting Procedures**

49. Despite the fact that Mississippi code allows absentee voters to use any "officer having authority to administer an oath" to act as a witness, sample ballots provided by the Secretary of State's office include language that indicates that it is necessary to have a *notary* sign a voter's absentee ballot. Specifically, under the "certificate of attesting witness" these sample ballots include a signature line which includes the following language: "(signature of person authorized to administer oaths) (i.e. notary)." Secretary of State, State of Mississippi, "Absentee Voter Forms" (last accessed Dec. 20, 2018), https://bit.ly/2CrzZnO.

50.    Because "i.e." stands for "in other words" (versus "'e.g." meaning "for example"), the wording on ballots incorrectly states that a notary is required.

51. The Mississippi Secretary of State provides little information regarding the absentee voting process for voters other than military and overseas voters. For instance, the Voter Information Guide found on the Secretary's website simply instructs voters to contact their county clerk "if you are entitled to vote by an absentee ballot and to learn the procedures for doing so." Secretary of State, State of Mississippi, "Voter Information Guide" (last accessed Dec. 20, 2018), https://bit.ly/2eIpXmu. No information is provided on who can act as an attesting witness.

52. The Secretary of State's Frequently Asked Questions on his website does not include information regarding how to vote absentee for anyone other than overseas or military voters. Secretary of State, State of Mississippi, "FAQs" (last accessed Dec. 20, 2018), https://bit.ly/2Sc25bZ.

53. The Secretary of State creates various extended guides concerning elections including, for instance, a 44-page "County Election Guide," Secretary of State, State of Mississippi, "County Election Handbook" (last accessed Dec. 20, 2018), https://bit.ly/2SddhW1; a 57-page 2017 Municipal Elections Handbook, Secretary of State, State of Mississippi, "Municipal Elections Handbook" (last accessed Dec. 20, 2018), https://bit.ly/2LtO6vz; and a 108-page poll manager guide, Secretary of State, State of Mississippi, "Mississippi Poll Manager Guide" (last accessed Dec. 20, 2018), https://bit.ly/2V2Tl9V.

54.    However, despite discussing election procedures at length, these guides systematically fail to explain the full universe of individuals who can serve as an attesting witness for absentee purposes.

55.     For instance, Defendant's County Election Guide simply states that "[a]pplications and ballot envelopes must be notarized or sworn and subscribed to by another official authorized to witness absentee balloting." Secretary of State, State of Mississippi, "County Election Handbook" (last accessed Dec. 20, 2018), https://bit.ly/2SddhW1.

56.     Similarly, Defendant's Municipal Election Handbook simply state that an "[a]bsent ballot [sic]  applications and absentee ballot envelopes must be acknowledged by an official authorized to administer oaths, such as a notary public or court clerk." Secretary of State, State of Mississippi, "Municipal Elections Handbook" (last accessed Dec. 20, 2018), https://bit.ly/2LtO6vz.

57.     Likewise, Defendant's Poll Manager's Guide states that "all applications must be acknowledged by 'one authorized to administer oaths,' such as the clerk or a notary." Secretary of State, State of Mississippi, "Mississippi Poll Manager Guide" (last accessed Dec. 20, 2018), https://bit.ly/2V2Tl9V.

58.     Despite providing extensive guidance on elections, Defendant's guides are materially incomplete and fail to explain who is eligible to serve as an attesting witness beyond a clerk or notary.

59.     Miss. Code Ann. § 11-1-1, "Who may take oaths," lists over *ten* other offices and/or individuals who are authorized to take oaths.

60.     Defendants' election related materials do not include an explanation that absentee voters can use a local judge, mayor, police justice, a member of a board of supervisors or other individual listed in Miss. Code Ann. § 11-1-1 as a witness when completing their absentee balloting materials.

61.     As a result of Defendants' failure to clarify and train election officials on the full universe of individuals and offices eligible to serve as an attesting witness in the absentee voting process, combined with Defendants' educational materials which routinely fail to mention anyone other

than a clerk or notary as an authorized official for absentee purposes, voters are left with the understanding that they *must* use a notary in completing the absentee voting process.

62.     Upon information and belief, county circuit clerks routinely advise voters and the general public that they must have their ballots notarized, and fail to explain that other alternatives are available to satisfy the requirement that the ballot be completed in front of an attesting witness.

63.     In practice, Plaintiffs and, upon information and belief, many other Mississippians interpret the instructions sent to them for completing an absentee ballot as requiring a notary.

### Mississippi's Absentee Voting Procedures Create Two Classes of Voters

64.     Mississippians who do not receive their absentee ballot until the weekend before the deadline to have absentee ballots back at the circuit clerk's office (i.e. the Monday *before* the election), must pay to overnight their ballot, if they wish for it to be counted.

65.     According to the U.S. Postal Service's website, the cost of overnight delivery service starts at $24.70. United States Postal Service, "Priority Mail Express – Overnight Delivery Guarantee" (last accessed Dec. 19, 2018), https://www.usps.com/ship/priority-mail-express.htm.

66.     Because the ballots for the November 2018 runoff election were not delivered until the Friday before the election and had to be back at their circuit clerk's office by Monday at 5pm, Plaintiffs Huber and Sewell paid a total of $24.70 to overnight their ballots to help ensure it would be received in time and that they would not be disenfranchised.

67.     Similarly, for the 2018 general election, Plaintiff Maggie George paid about $17 in order to mail her ballot express, because she was nervous that it would otherwise not reach the Oktibbeha County Circuit Clerk by the deadline for absentee ballots.

68.     In *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 667 (1966), the Supreme Court considered a classification based on wealth and found that, where fundamental rights, such as

voting, are asserted, classifications which might invade or restrain them must be "carefully and meticulously scrutinized."

69.     In applying "close scrutiny" to the poll taxes at issue in *Harper,* the Court found that "a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard" and that "[v]oter qualifications have no relation to wealth." *Id.* at 666.

70.     Defendants' actions violate the Equal Protection Clause by arbitrarily creating two classes of voters: Mississippi residents who have disposable income available to cover the cost of out-of-state notary services and, if necessary, overnighting their ballot, and those residents who cannot afford to participate in Mississippi's absentee voting process.

71.     Upon information and belief, through no fault of their own, many voters who tried to vote absentee in the recent elections were unable to do so, due to confusion around who could act as an attesting witness, lack of access to a notary, the tight timeline, and/or the cost of mail services.

72.     Refusing to provide for no or low-cost means of participating in the absentee voting process would continue a system which arbitrarily distinguishes between these two sets of similarly situated voters.

73.     In addition, Defendants' actions violate the Equal Protection Clause by arbitrarily treating voters who happen to live in a county that mails out an absentee ballot in conjunction with an absentee ballot application and voters who live in a county that mails the ballot and application separately.

74.     Because of the tight timeframe during runoff elections, voters who live in counties that do not mail the application and ballot at the same time are much more likely to have to pay to deliver their ballot back to their county via overnight mail, or risk being disenfranchised.

**A Significant Number of Voters Vote Absentee in Mississippi**

75.      According to a Report by the Election Assistance Commission, in the 2016 general election, Mississippi voters cast more than 100,000 absentee ballots. Election Assistance Commission, The Election Administration and Voting Survey: 2016 Comprehensive Report, June 29, 2017, *23-24, https://www.eac.gov/assets/1/6/2016_EAVS_Comprehensive_Report.pdf.

76.      According to an article by the Associated Press, 50,571 absentee ballots were requested in 2018, up from 25,395 ballots in 2014. Emily Wagster Pettus, "Mississippi election leader predicts strong voter turnout," Associated Press (Oct. 31, 2018), https://bit.ly/2Gqrrl7.  Absentee ballots typically account for four to five percent of Mississippi's total vote.  *Id.*

77.   In an article in the Clarion Ledger, Mississippi State Senator David Blount was quoted saying that the absentee voting process provides "a very tight window to vote." Jimmie E. Gates, "State holidays could impact absentee voting for runoff elections," Clarion Ledger (Nov. 12, 2018), https://bit.ly/2BzEDhV.

**Plaintiffs and Other Mississippians Were Unduly Burdened by Mississippi's Absentee Voting Procedures in the November 27 Election and Will Continue to be Burdened in Future Elections**

78.      Mississippi's absentee ballot procedures burden the right to vote, serve no legitimate governmental purpose that cannot be accomplished by more tailored means, and threaten to disenfranchise honest, eligible voters.

79.      Plaintiffs are eligible Mississippi voters who are over the age of 18, U.S. citizens, and have lived in the State for more than thirty (30) days prior to the registration deadline. All of them are registered to vote and have voted in Mississippi in recent elections. Plaintiffs requested absentee ballot applications in Mississippi. Despite following the requirements and deadlines prescribed by the Mississippi Election Code, Plaintiffs were forced to take incredible measures –

such as paying for overnight shipping or traveling across state lines– in order to try to vote in the runoff election. Plaintiff George was completely disenfranchised.

80.  Plaintiff Barbara O'Neil was in Tennessee in the days preceding the runoff election. On November 14, she called the Hinds County Circuit Clerk's Office to request an absentee ballot application to be sent to her temporary address in Memphis, Tennessee. On November 16, she received an absentee ballot application by postal mail. The absentee ballot application she received incorrectly listed her as having a temporary or permanent disability as the reason behind her needing to vote absentee. That same day, Ms. O'Neil called the Hinds County Circuit Clerk's Office and requested a second absentee ballot application. She received the second application on November 19. However, upon reviewing the application, Ms. O'Neil was confused about what was necessary to complete the absentee ballot application and who could act as a witness and called the Hinds County Circuit Clerk's Office again. She was told by staff at the Clerk's Office that a notary could sign where it says on the application "official authorized to administer oaths for absentee balloting."  She was not informed of any alternatives to using an official notary for completing her application. On November 20, 2018, Ms. O'Neil returned her application via priority mail on November 20. Ms. O'Neil lives on a fixed income, and selected priority mail because, while she was concerned about the impact of the Thanksgiving holiday on delivery of the application, she did not feel she could afford the cost of overnight mail. However, despite sending her application back via priority mail, Ms. O'Neil did not receive her absentee ballot. On November 27, 2018, the day of the runoff election, having still not received her absentee ballot, Ms. O'Neil returned to Jackson to cast her ballot in person. She was able to return to Jackson in time to vote in person only because a family member, who had been ill, felt well enough for her to leave from Tennessee to Mississippi on the date of the runoff election. Ms. O'Neil was concerned

that she would not be able to cast an absentee ballot in the runoff election due to the limited number of days left for her to receive, complete, notarize, and send both the absentee application and the ballot to the Clerk's Office, if her family member had not been well enough for her to leave Tennessee earlier than planned. She is concerned that she may not be as lucky in future elections.

81.    Plaintiff William Sewell returned to Boston on November 15, 2018 for work and the Thanksgiving holiday and could not vote in person in the November 27 runoff election.  On November 17, Mr. Sewell called the Harrison County Circuit Clerk's Office to request an absentee application. Mr. Sewell was able to request absentee applications and ballots for both himself and his wife Julianne, mailed to their Boston address. Late Friday, November 23, Mr. Sewell received his absentee application and ballot in the mail. It was too late to locate a notary and mail the materials.

82.     Plaintiff Julianne Huber returned to Boston on November 8 for work and the Thanksgiving holiday and could not vote in person in the November 27 runoff election. As soon as she learned of the runoff election on November 7, she immediately called the Harrison County Circuit Clerk to request an absentee ballot, but was told to call back later. When she called a second time on November 9, she was again told she could not yet request an absentee ballot for the runoff and would need to call back on November 17. She set an alarm to remind herself to call yet a third time, but got pulled into an emergency medical procedure. She asked her husband William to call on her behalf.  She later learned that William was able to request absentee materials for both himself and her. Late Friday, November 23, Ms. Huber received her absentee application and ballot in the mail. It was too late to locate a notary and mail the materials.

83.    Plaintiffs Huber and Sewell both understood the voting instructions to require that both the application and ballot be completed in front of a notary.

84.     On the morning of Saturday, November 24 around 8 a.m., Mr. Sewell and Ms. Huber went to a post office in Boston to get their applications and ballots signed by a notary. However, they were told that the postmaster was not in during the weekend and that no one working that weekend was authorized to administer oaths. They were told to return on Monday when the passport office would be open. Mr. Sewell and Ms. Huber then called all the other post offices in Boston, which sometimes have notary services, but found only one that had notary services. However, that post office had no one available on Saturday, November 24 because it was a holiday (Thanksgiving) weekend. Plaintiffs Sewell and Huber also called the nearest FedEx, but were told that that FedEx office no longer provided notary services. Next, Plaintiffs Sewell and Huber tried calling their bank (Citizens Bank), but all local branches of the bank were closed for the holiday weekend.  Mr. Sewell and Ms. Huber walked around, trying to find a bank that was open and that had a notary. Eventually, they found a Bank of America which opened later that day. Mr. Sewell and Ms. Huber returned later in the day and successfully got their absentee ballot materials notarized.

85.      That same day, Mr. Sewell mailed his and Ms. Huber's completed absentee materials via overnight mail at a cost of $24.70.

86.     Altogether, it took Plaintiffs Sewell and Huber from 8 a.m. until noon walking throughout downtown Boston in the cold weather to locate a notary, get their materials notarized, and walk back to the post office to mail their applications and ballots.

87.     Plaintiff Maggie George is a permanent resident of Oktibbeha County, Mississippi but is currently a student in Massachusetts. Because she knew she would be out of state during the general election, Ms. George called well in advance of the election to complete her voter registration and request an absentee ballot. Ms. George estimates she had to call about six times before the Oktibbeha County Circuit Clerk's Office sent her an absentee ballot.

88.      When Ms. George finally received her absentee ballot, she tried to find a notary to help her complete it but had to go to a number of different places before she found someone available to notarize her ballot. Once she got it notarized, she took it to the post office and, because she had received the ballot so close to the election, paid about $17 to send it back via express mail so that she could better ensure it would be received in time. Ms. George estimates that the total process of trying to obtain a ballot, find a notary, and go to a post office took about five hours.

89.      During the November 2018 runoff election, Ms. George called three days after the general election to request an absentee ballot. The staff person who spoke with Ms. George said she would put in Ms. George's request for an absentee ballot, took down all of Ms. George's contact information, read it back to her, and assured Ms. George she would relay the request for an absentee ballot to the Circuit Clerk so that it could get taken care of. However, six days after that, Ms. George called the County Circuit Clerk's Office again and spoke with the clerk, who told Ms. George she had not received her request for an absentee ballot. The Circuit Clerk then told Ms. George that there was not enough time for a ballot mailed from Oktibbeha County to reach Boston and be returned by the deadline for absentee ballots. Ms. George then suggested the County send the ballot to her grandparents' home in Texas, where Ms. George would be over the Thanksgiving holiday and, because of Texas' relative proximity to Mississippi. The Circuit Clerk agreed to do so. However, Ms. George never received here absentee ballot—either at her temporary address in Boston or at her grandparents' home in Texas. As a result, Ms. George was disenfranchised through no fault of her own and unable to vote in the runoff election.

90.      Plaintiff MS NAACP has had to divert resources—including staff time and money—to educate and help Mississippians navigate the burdensome absentee procedures so that they can participate in state and federal elections.

91.     On November 16, the Lawyers' Committee for Civil Rights Under Law sent a letter to Secretary Hosemann requesting that all absentee ballots postmarked by November 27 be counted in the runoff election and that the Secretary of State issue accessible guidance on its website to prospective absentee voters in the upcoming election.

92.     On November 20, Assistant Secretary Kim Turner responded to the letter stating that the Secretary of State did not have authority to extend the deadlines for counting absentee ballots. The letter and response are attached as Exhibit A.

93.     On November 21, Plaintiffs filed a complaint, seeking relief for themselves and other absentee votes in both the runoff election and all future elections.

94.     On November 26, Plaintiffs filed for preliminary injunctive relief for themselves and other absentee voters for the runoff election.

95.     On November 27, this Court denied Plaintiffs' motion for a temporary restraining order noting that, because of the timing issues, Plaintiffs were essentially seeking retroactive relief.

## COUNT I: FUNDAMENTAL RIGHT TO VOTE

### 42 U.S.C. § 1983

**Infringement of the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments in**

96.     Plaintiffs incorporate and re-allege each of the foregoing paragraphs.

97.     42 U.S.C. § 1983 provides in pertinent part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

98.     Defendants' actions described herein were taken under color of the laws of the State of Mississippi.

99.     The First and Fourteenth Amendments of the United States Constitution protect the right to vote as a fundamental right. The right to vote is a "fundamental political right" that is "preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). The right to vote includes "the right of qualified voters within a state to cast their ballots and *have them counted*." *United States v. Classic*, 313 U.S. 299, 315 (1941) (emphasis added).

100.    The First Amendment's guarantees of freedom of speech and association protect the right to vote and to participate in the political process. The right to vote is a fundamental constitutional right also protected by the due process and equal protection clauses of the Fourteenth Amendment. S*ee, e.g., Bush v. Gore*, 531 U.S. 98, 104-05 (2000); *Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 670 (1966) (holding that Virginia's poll tax violated the Equal Protection Clause); *Anderson v. Celebrezze*, 406 U.S. 780, 786-87 (1983) (concluding that the right to vote is incorporated into the Due Process Clause).

101.    Inherent in individuals' fundamental right to vote is the right to have one's vote counted and reported correctly, and to be as effective as the votes cast by other voters in the same election.

102.    Current election procedures make it exceptionally difficult to vote absentee in Mississippi.

103.    Eligibility for absentee voting is limited to only narrow categories of voters, and some categories of voters that are otherwise eligible to vote are not eligible for absentee voting.

104.    Absentee ballot applications are not available online and must be on official seal.  This burdens the right to vote because it requires voters to either appear in person or receive the ballot application via mail.

105.     Voters may have to pay additional money to send the application quickly if there is limited time before the election in order to attempt to get an absentee ballot.

106.     Voters are also required to have both the absentee ballot envelope and application notarized or otherwise signed by an official authorized to administer oaths, despite attesting to their identity and signing an acknowledgment of penalties up to $5,000 for including false information on both forms. This process also requires voters to find a notary or other official authorized to administer oaths, which adds more time to the absentee voting process and often involves fees that out-of-state voters will have to pay twice in order to comply with Mississippi law.

107.     Defendants have failed to educate Mississippians and train election officials as to the full universe of individuals who can act as an attesting witness for absentee balloting purposes, and instead include language in absentee balloting materials that is confusing and leaves many voters with the impression that they need notary services to complete the absentee process.

108.     Many Mississippians, including plaintiffs, are unclear as to who can serve as an attesting witness for absentee balloting purposes.

109.     While these procedures are burdensome during general elections, they are especially burdensome in runoff elections and, because of the tight time frame between when general election results are certified and when a runoff election occurs, renders it virtually impossible for many absentee voters to vote.

110.     Voters who sought to vote absentee in the November 27, 2018 runoff election were required to complete the many steps to getting and completing an absentee ballot in roughly one week.

111.    Upon information and belief, many Mississippians, including Plaintiffs Sewell and Huber paid for overnight or expedited shipping in an effort to cast the ballot and ensure that their ballot would be counted in the November 2018 runoff election and, given the tight timeframe for runoff elections, will need to do so again if there are future runoff elections.

112.    By not giving electors who vote absentee a reasonable opportunity to cast their ballot, Defendants knowingly and severely burden and infringe upon the fundamental right to vote of Plaintiffs and other, similarly-situated voters.

113.    Defendants' practices unduly burden Mississippi voters and are not outweighed by, and are not necessary to promote, any substantial or compelling state interest that cannot be accomplished by other, less restrictive means.

### COUNT II: EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

**Defendants' Practices Create Two Classes of Voters Based on Wealth**

114.    Plaintiffs incorporate and re-allege each of the foregoing paragraphs.

115.    The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

116.    Mississippi's voting procedures deny equal protection of the laws to its residents by unnecessarily creating two classes of potential absentee voters in a runoff election: those who can afford the fees for overnight or expedited mail delivery and those who cannot.

117.    Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

## COUNT III: EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

**Defendants' Practices Create Two Classes of Voters Based on Whether a Voter is a Resident of a County that Mails Absentee Ballots with an Application or a County That Does Not**

118.    Plaintiffs incorporate and re-allege each of the foregoing paragraphs.

119.    Under Mississippi Code, counties may determine whether to send an absentee ballot with an absentee ballot application at the same time or not.

120.    Some Mississippi Counties send ballots at the same time as an absentee application, while others do not.

121.    Mississippi's voting procedures deny equal protection of the laws to its residents by unnecessarily creating two classes of potential absentee voters in a runoff election: those who receive their ballot with their application and therefore are able to complete the absentee process in the few days they have to do so during a runoff election, and those who do not.

122.    Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray that the Court:

•    Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this First Amended Complaint;

•    Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that Mississippi's early deadline for receipt of absentee ballots, combined with its burdensome absentee ballot regime, taken together, prevent eligible voters from voting in Mississippi run-off elections and therefore violate Plaintiffs' fundamental right to vote;

- Grant permanent injunctive relief by ordering that Defendants all steps necessary to discontinue enforcement of the current deadline for returning absentee ballots by mail for runoff elections and instead accept absentee ballots that are postmarked on or before Election Day and received on or before the certification deadline;

- Grant permanent injunctive relief by ordering that Defendants:

  a.  Issue guidance to election officials to create a means for eligible absentee voters to indicate on their absentee ballot applications that they will be voting absentee in both the general and run-off elections, in the event there is one, so that they do not need to request and apply for an absentee ballot a second time in order to receive a run-off ballot;

  b.  Issue binding guidance to country registrars requiring that they mail absentee ballots along with initial applications for absentee ballots;

  c.  Update their websites and other educational materials to provide more easily accessible information to Mississippians on how to vote absentee by mail, including a comprehensive list of which types of officials are authorized to administer oaths for absentee balloting, and information about how to obtain no-cost notarization or other no-cost absentee oath administration;

  d.  Clarify who can serve as an attesting witness for absentee ballot applications and for completion of the absentee ballot so that it is clear that an "official authorized to administer oaths for absentee balloting" does not include just notaries, but can also include those individuals listed under Miss. Code Ann. § 11-1-1, including, but not limited to, judges, court clerks, court reporters, masters, members of a board

of supervisors, justice court judges, notary publics, mayors, a police justice, or clerks for a municipality.

e.     Update the absentee ballot envelope, absentee ballot instructions to voters, any materials mailed to voters, and election guides and other election materials produced by Defendants' such that they list *all* officials who are authorized to administer oaths, as listed in Miss. Code Ann. § 11-1-1.

f.     Take all other reasonable steps to thoroughly train Mississippi election officials, including staff at county circuit clerk offices, as to the complete list of *all* officials authorized to administer oaths, as listed in Miss. Code Ann. § 11-1-1; Ensure any sample ballots or other election related materials created do not imply that a notary is required to complete the absentee ballot application or ballot;

g.     Take steps (e.g., an audit) to evaluate and ensure staff at circuit county clerks are providing voters with the correct information regarding the absentee voting process;

h.     Educate Mississippians about the absentee voting process and to provide adequate notice to the public of all forms of the relief granted, including, but not limited to, a press release to the media and print notice mailed to all voters who voted absentee in the 2018 and 2016 general elections;

- Retain jurisdiction to render any and all further orders that this Court may deem necessary;

- Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute; and

- Grant Plaintiffs such other and further relief as may be just and equitable.

Respectfully submitted this 20th day of December, 2018.

/s/ *Carroll Rhodes*
Carroll Rhodes, Esq.
*Attorney for the Mississippi State Conference of the N.A.A.C.P.*
Mississippi Bar No. 5314
Law Offices of Carroll Rhodes
P.O. Box 588
Hazelhurst, MS 39083
Phone: (601) 894-4323
Fax: (601) 894-1464
Email: crhode@bellsouth.net

Ezra D. Rosenberg (*pro hac vice* to be filed)
Arusha Gordon (*pro hac vice* to be filed)
Pooja Chaudhuri (*pro hac vice* to be filed)
Jennifer Nwachukwu (*pro hac vice* to be filed)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
Phone: (202) 662-8600
Fax: (202) 783-0857

Neil A. Steiner (*pro hac vice*)
DECHERT LLP
1095 6th Avenue
New York, NY 10036
Phone: (212) 698-3500
Fax: (212) 698-3599

Julia Chapman (*pro hac vice*)
Jillian Taylor (*pro hac vice*)
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Phone: (215) 994-2000
Fax: (215) 994-2222

## <u>CERTIFICATE OF SERVICE</u>

I, Jillian Taylor, one of the attorneys for Plaintiffs, hereby certify that on December 20, 2018, I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

>     Justin L. Matheny
>     Mississippi Attorney General's Office
>     P.O. Box 220
>     550 High Street (39201)
>     Jackson, MS 39205-0220
>     601-359-3825
>     Fax: 601-359-2003
>     Email: jmath@ago.state.ms.us
>
>     Stephen Lee Thomas & Simon T. Bailey
>     Bradley Arant Boult Cummings, LLP – Jackson
>     P.O. Box 1789
>     188 E. Capitol Street, Suite 400 (39201)
>     Jackson, MS 39215-1789
>     601-948-8000
>     Fax: 601-948-3000
>     Email: sthomas@babc.com, sbailey@bradley.com

Dated: December 20, 2018          /s/ *Jillian Taylor*
                                  Jillian Taylor, Esq. (*pro hac vice*)
                                  Dechert LLP
                                  2929 Arch Street
                                  Philadelphia, PA 19104
                                  Phone: (215) 994-2026
                                  Fax: (215) 994-2222
                                  Email: jillian.taylor@dechert.com